Johnny P. WHITT, Sr. and Bonnie L. Whitt, Appellants–Defendants,

v.

Donald E. FERRIS and Nancy L. Ferris, husband and wife, Rick A. Jones and Pamela F. Jones, husband and wife, and Norman G. Stettler and Valna R. Stettler, husband and wife, Appellees–Plaintiffs.

No. 50A04–9110–CV–353.

Court of Appeals of Indiana, Fourth District.

July 15, 1992.

Keith E. White, George T. Patton, Jr., Bose, McKinney & Evans, Indianapolis, Kenneth H. Lukenbill, Stevens, Travis, Fortin, Lukenbill & Burbrink, Plymouth, for appellants-defendants.

Ralph R. Huff, Jones, Huff & Palmer, Douglas N. Hite, Plymouth, for appellees-plaintiffs.

CONOVER, Judge.

Defendants–Appellants Johnny P. Whitt, Sr. and Bonnie L. Whitt (Whitt) appeal a judgment in favor of Plaintiffs–Appellees Donald E. and Nancy L. Ferris (Ferris), Rick A. and Pamela F. Jones (Jones), and Norman G. and Valna R. Stettler (Stettler).[1]

We affirm in part and reverse in part.

Whitt raises the following restated and consolidated issue: whether the trial court erred in finding an implied easement in favor of the appellees.

In 1967, John and Mary Kumpf purchased approximately eighty-eight acres in Marshall County. In early 1968, they subdivided most of the acreage, calling the subdivision Beechwood Country Estates (Beechwood). The plat map was recorded and was approved by the Plymouth City Planning Commission.

During the summer or early fall of 1968, some of the platted roads, including a road running east to west along the southern end of the property called "Tulip Drive", were graded. However, when the Kumpfs discovered each lot as platted was individually taxable, they vacated all the platted lots and streets, except for Lots 1 through 6 abutting a public road called "King Road", by recording a document to that effect in the county recorder's office.[2] No lots had been sold when the plat was vacated.

Lots 5, 6, 7, and 8 are involved in this case. Lots 5 and 6, which are located in Beechwood, as currently platted, both abut the intersection of King Road and former Tulip Drive on the northwest and southwest corners, respectively. Lot 7 abuts Lot 6 on its west boundary and Lot 8 abuts Lot 5 on its west boundary. Both Lots 7 & 8 abut Tulip Drive's former boundaries on the south and north, respectively. Neither Lot 7 nor Lot 8, however, is included in Beechwood, as currently platted.[3]

Ferris owns Lot 5 in Beechwood and former Lot 8 in that part of the subdivision which was vacated by the Kumpfs (vacated Beechwood). Jones owns Lot 6 in Beechwood. Lot 7 in vacated Beechwood is owned by Stettler. Bonnie Whitt pur-

---

1. When Ferris, Jones, and Stettler are referred to collectively, we will use the term "appellees".

2. King Road is a north/south public roadway which bounds Lots 1 through 6 on the east side.

3. Before the vacation of the subdivision, Tulip Drive was planned as a street sixty feet wide and one thousand and fifty feet long. However, only a twenty foot wide strip was ever graded for the road, with twenty foot strips of grass on each side. Even though they contend they have an easement over the entire length of what was planned to be Tulip Drive, the appellees only asked the trial court for use of an area sixty foot wide (the road plus the grassy areas) and three hundred and eighty feet long. Hereinafter, this area, which encompasses part of what was to be Tulip Drive and its boundaries, will be designated the "Disputed Parcel".

chased the property surrounding these four parcels, including the Disputed Parcel.

The Disputed Parcel is a twenty foot wide dirt and gravel road surrounded by twenty foot wide strips of grass on each side. The road through the Disputed Parcel was used over the years to access vacated Beechwood, most of which was farmland. In 1982, Stettler began using the road through the Disputed Parcel as his only means of ingress and egress to his property, Lot 7 of vacated Beechwood. Ferris used the road to get to his back lot, Lot 8 of vacated Beechwood. Jones also used the road to access the back of his lot, Lot 6 of Beechwood. Ferris, Jones, and Stettler have all used the grassy areas on the sides of the road through the Disputed Parcel for parking.

Whitt protested the appellees' use of the Disputed Parcel, especially the use of the grassy areas for parking. She then constructed a fence alongside the south side of the Disputed Parcel to match the one on the north side erected by Ferris. However, Whitt did leave an opening in the fence for Stettler's driveway. The appellees brought suit seeking to permanently enjoin interference with their use of the Disputed Parcel. Whitt brought a counterclaim for trespass. The trial court granted each of the appellees an implied easement sixty feet in width and three hundred and eighty feet in length. The court opined the easement could be used in the same manner in which a public road is used.

Whitt appeals from the judgment in favor of Jones, Ferris, and Stettler, and the negative judgment on her counterclaim. The standard of review on appeal is whether the trial court's judgment is contrary to law. *McConnell v. Satterfield* (1991), Ind. App., 576 N.E.2d 1300, 1301. Because the trial court entered a general judgment, we will affirm on any theory supported by the evidence. *Beck v. Mason* (1991), Ind.App., 580 N.E.2d 290, 291.

The appellees claim the trial court's judgment is justified because (1) their lots were sold in reference to a plat showing the Disputed Parcel as a road; (2) an implied easement arose upon the severance of the parcels; and (3) with reference to Lot Five, a prescriptive easement has been established over the years. Stettler also claims he has a way of necessity because his property is landlocked. Except for the way of necessity theory as applied to Stettler's property, the trial court's judgment is unsupported.

## I. WAY OF NECESSITY.

A way of necessity is implied by law where there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without access to a public road. *Hunt v. Zimmerman* (1966), 139 Ind.App. 242, 218 N.E.2d 709, *reh. denied;* 11 I.L.E. *Easements* § 19. Where a grantor conveys a parcel of land which has no outlet to a public road except over his remaining land or over the lands of a stranger, a way of necessity over the remaining lands of the grantor is implied. *Pyramid Coal Corp. v. Pratt* (1951), 229 Ind. 648, 99 N.E.2d 427, 429.

In the present case, former Lot 7 was part of a larger tract originally owned by the Kumpfs. After a number of conveyances, the large tract ended up in the possession of the Browns. The Browns originally severed Lot 7 from the tract by conveying it to William Brown. Stettler acquired former Lot 7 through mesne conveyances beginning with William. The only access from former Lot 7 to a public road (King Road) is over the Disputed Parcel. The road over the Disputed Parcel has been used to access the public road since the lot was conveyed out of the larger tract by the Browns. Under the facts, the trial court was correct in finding a way of necessity over the road running through the Disputed Parcel.

However, the trial court erred in finding Stettler's way of necessity is sixty feet wide. Easements are limited to the purpose for which they are created. 11 I.L.E. *Easements* § 31. In the present case, where the easement is necessary only as a way to access Stettler's property, access over the twenty foot wide graded roadway through the middle of the Dis-

puted Parcel, coupled with sufficient footage over the grassy area on the south side of the road to allow access to Stettler's driveway, is all that is necessary. There is no need to burden the servient estate further by allowing use of the grassy areas on the sides of the road for parking. *See, New York Central Railroad Company v. Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604, 606.

■ Whitt contends a way of necessity cannot exist because of a provision in both Brown and Stettler's deeds which provides "access to this parcel is not included in the above description." (R. 168, 176). In support of her contention, Whitt cites *Hewitt v. Meaney* (1986), 181 Cal.App.3d 361, 226 Cal.Rptr. 349, and 25 Am.Jur.2d *Easement and Licenses* § 34, which conclude the grant of a way of necessity will not be made where the terms of the conveyance show the parties did not intend the grantee's estate to have access over the grantor's property.

The trial court found the language of the deeds to be ambiguous, a determination which the Whitts do not now challenge. Accordingly, the trial court allowed the drafter of William Brown's deed to testify on the meaning of the limiting language. The drafter opined the language was included in the deed "as a word of caution to a prospective recipient of this deed that there was no public access to this property that was included within this description." (R. 324). The trial court did not err in finding the limiting language to be merely cautionary. Thus, the language of the deed did not prevent the trial court from finding a way of necessity in favor of former Lot 7.

## II. EASEMENT BY REFERENCE TO A PLAT MAP.

The appellees argue they have an easement over the Disputed Parcel due to the sale of their property with reference to the old plat map. They refer to cases holding that where a conveyance of land describes the property by reference to a plat upon which a street is depicted, an easement is implied over the entire street for the benefit of the lots represented in the plat. Brief of Appellees at 18 (*citing Hall v. Breyfogle* (1904), 162 Ind. 494, 70 N.E. 883; *Wolfe v. Sullivan* (1893), 133 Ind. 331, 32 N.E. 1017; *City of Indianapolis v. Kingsbury* (1884), 101 Ind. 200; *Strunk v. Pritchett* (1901), 27 Ind.App. 582, 61 N.E. 973). The appellees maintain that although the Kumpfs vacated the public easement prior to sale of any lots, a private easement exists to this day.

The cases cited by the appellees do not support the trial court's judgment in this case. The conveyances in the present case, unlike those in the cited cases, were made after the vacation of the plat.

■ When the Kumpfs laid out the subdivision on March 5, 1968, they conveyed to the public an easement over the Disputed Parcel and retained fee simple ownership in the land. Although the Kumpfs conveyed the easement on that date, they vacated the easement on February 26, 1969, stating "[t]hat they desire to divest all public rights in and to the streets located in said Beechwood Country Estates." (R. 161). The applicable statute on February 26, 1969, provided:

Any plat of land without the corporate limits of any city or town, or any part thereof, may be vacated by the owner or owners of said entire plat at any time before the sale of any lot therein, by a written instrument declaring the same to be vacated, executed, acknowledged and recorded in like manner as deeds of lands; which declarations, having been so recorded, shall operate to destroy the force and effect of such plat or the part thereof declared to be vacated, and to divest all public rights in the streets, alleys and other public grounds therein laid out or described in such plat or the part thereof so declared to be vacated.

Ind. Statutes § 48–901 (Burns 1963) (subsequently codified IND. CODE 18–5–10–42 (1974), superseded IC 36–7–3–10 (1989). Since no lots had been sold at the time of the vacation of the plat, there were no private easements in existence at that time. Fee simple title to the Disputed Parcel, free of any easements, was in the Kumpfs.

Lot 5 of Beechwood Country Estates was conveyed by the Kumpfs to C & S Enterprises in 1969. The deed referred to "Lot 5 of Beechwood Estates, as shown on the Plat Record in Plat Book 4, p. 35 [the original plat map], Recorder's Office, Marshall County, Indiana, *as it now is....*" (Emphasis supplied). (R. 162). C & S subsequently conveyed the lot to Ferris. Lot 6 was conveyed to Tru–Value Builders, Inc. in 1976. The deed referred to "Lot Number Six (6) of Beechwood Country Estates" without reference to the original plat map. (R. 172). Tru–Value subsequently conveyed the lot to the Kiefers who conveyed it to Jones. When Ferris acquired his back lot (Lot 8), the deed referred to "real estate [which] was *formerly* described as Lot No. 8 of Beechwood Country Estates which plat and lot therein were *vacated* in 1969." (Emphasis supplied). (R. 169).

References to the old subdivision in the deeds were for the purpose of showing the buyers where their lots were located; they were obviously not an attempt to reinstate the vacated plat. References to the original plat map did not recreate easements to roads in the now nonexistent old subdivision.[4]

## III. IMPLIED EASEMENT UPON THE SEVERANCE OF THE ESTATE.

Generally, an easement will be implied where during the unity of title, an owner imposed an apparently permanent and obvious servitude on one part of the land in favor of another part, and the servitude was in use when the parts were severed, if the servitude is reasonably necessary for the fair enjoyment of the land. *McConnell, supra,* at 1302. Stated differently, an easement will be implied where (1) there was common ownership at the time the estate was severed; (2) the common owner's use of part of his land to benefit another part (a quasi-easement) was apparent and continuous; (3) the land was trans-

ferred; and (4) at severance it was necessary to continue the preexisting use for the benefit of the dominant estate. *See* J. BRUCE & J. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 4.01(2) (1988).

Even though the owner of the dominant estate does not need to show absolute necessity, there still must be some necessity shown. *Fischer v. Revett* (1982), Ind.App., 438 N.E.2d 995, 996–997. In Indiana, a landowner seeking an easement to access part of his lot, when only a portion of the land is inaccessible, faces a heavy burden. *McConnell, supra.*

In both *Fischer* and *McConnell*, this court emphasized that a means of access will not be granted if another reasonable means exists. Accordingly, in *Fischer* the court found no easement was implied where a loop of a driveway which infringed on a neighbor's property was not necessary for ingress or egress. The court so held even though the loop had been used by the former owner of both tracts. Similarly, in *McConnell* the court found an easement could not be implied over a driveway which was originally a part of a single estate, but became the appellee's property upon severance. This was true even though the appellant presented evidence that if he were not allowed an easement over the appellee's property he would have to tear out part of his pool deck and retaining wall, or place a driveway over a septic system, to gain access to his garage. The court noted "[a] way of reasonable necessity must be more than convenient and beneficial, for if the owner of the land can use another way, he cannot claim by implication the right to pass over that of another to get to his own." 576 N.E.2d at 1302 (*quoting Shandy v. Bell* (1934), 207 Ind. 215, 189 N.E. 627, 631). The court also noted McConnell "could have sought assurances of ready access to the garage by means of Satterfield's driveway when they bought Lot B if that was important to them." *Id.*

4. There was testimony indicating the Kumpfs harbored a hope that even after the vacation of the west portion of Beechwood they would still be able to develop and sell the west portion as a subdivision. If the back lots were so developed then the road over the Disputed Parcel may have been part of the new subdivision and all lot owners could have enjoyed its use. However, the hope was never communicated to the owners of Lots Five and Six. These uncommunicated desires are irrelevant to the interpretation of the four corners of the deed.

Even though the road through the Disputed Parcel was continuously used over the years, its use by the Kumpfs and the Browns (the owners of the unified tracts) was for the purpose of reaching farmland and a dump. Under current case law, use of the road is not reasonably necessary for the fair enjoyment of the appellees' lots.

*Fischer* and *McConnell* dictate our decision here. Lots 5 and 6 abut a public roadway; there is no reasonable necessity to burden the Whitt's property to benefit the lots. In addition, there is no evidence to indicate that at the time of severance of the larger tract, the road was used to benefit these lots. The road was always used to access farmland and a dump west of Lots 5 and 6.

When Lot 8 was transferred to Ferris as a back lot to Lot 5, there was no garage located there. Ferris constructed the garage at a later date and built a driveway to the road running through the Disputed Parcel. At the time of severance, access to the lot could have been reasonably accomplished through Ferris's front lot. Even now, reasonable access can be accomplished by moving one to three trees to another part of Lot 5. Under *McConnell*, there is no need to use the Disputed Parcel to access the back lot.[5]

## IV. EASEMENT BY PRESCRIPTION (LOT 5).

In order to establish the existence of a prescriptive easement across land of another, the evidence must show an actual, hostile, open, notorious, continuous, uninterrupted adverse use for twenty years under a claim of right. *Greenco, Inc. v. May* (1987), Ind.App., 506 N.E.2d 42, 45. Each element of a prescriptive easement must be established by the party asserting the right; failure to prove any one of the elements is fatal. *Searcy v. LaGrotte* (1978), 175 Ind.App. 498, 372 N.E.2d 755, 757.

In the present case, there is no evidence to indicate the Disputed Parcel was used in the above-mentioned manner by the owners of Lot Five for a period of twenty years. Since Lot Five was first conveyed in December of 1969 and this action was filed in June of 1990, the evidence must indicate prescriptive use beginning no later than June of 1970. The only evidence of length of use is a neighbor's testimony that the road through the Disputed Parcel had been used regularly by all the people who owned the various lots. The evidence did not establish at what point during the two year and eight month period C & S owned Lot Five that they began using the road over the Disputed Parcel. The evidence also did not establish whether C & S's use was adverse. Accordingly, as a matter of law the trial court's judgment was not sustained on the basis of the establishment of a prescriptive easement.

The trial court's judgment is reversed in part and affirmed in part. The case is remanded to the trial court for further proceedings consistent with this opinion.

CHEZEM and HOFFMAN, JJ., concur.

---

**5.** The appellees suggest *Ellis v. Bassett* (1891), 128 Ind. 118, 27 N.E. 344, establishes that constant use of a private street is notice of an easement to purchasers of the property over which it passes. *Ellis,* however, discusses the nature of a private street used as the only means of access; therefore, it is not applicable here.