

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| PATRICK T. WOODLING, | ) | ED102584 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 14SL-CC00951 |
| | ) | |
| GREGORY POLK and ADRIENNE | ) | Honorable Barbara W. Wallace |
| POLK, | ) | |
| | ) | |
| Respondents. | ) | Filed: October 27, 2015 |

## Introduction

Patrick Woodling (Woodling) appeals the trial court's summary judgment in favor of Gregory and Adrienne Polk (collectively, the Polks). Woodling sued for declaratory judgment and permanent injunction regarding a strip of land on the Polks' property over which Woodling claimed he had an easement. Woodling also appeals the trial court's dismissal of his trespass claim. We affirm.

## Background

In 2004, Post Valley, LLC, d/b/a Merdinian Homes (Merdinian), a developer, owned two adjacent residential lots, located at 1017 Forest Avenue and 1019 Forest Avenue in Kirkwood, Missouri. There was one wide driveway serving both properties, but situated on 1019 Forest's lot, so Merdinian executed and recorded an "Easement

Deed," intended to create an easement for "ingress, egress, maintenance, [and] repair" of the driveway on 1019 Forest "[f]or the use and benefit of the present and future owners of 1017 Forest." The Easement Deed listed Merdinian as both the grantor and the grantee.

In 2005, Merdinian began negotiating the sale of 1017 Forest to William and Eileen Healy (collectively, the Healys). As the Healys considered the sale, they realized that the driveway serving 1017 Forest was actually situated on the property of 1019 Forest. This was a portion of land addressed by the Easement Deed. The Healys were concerned about this situation and requested that Merdinian adjust the boundary line between 1017 Forest and 1019 Forest so that the driveway of 1017 Forest would be completely situated on 1017 Forest's lot. Merdinian adjusted the boundary accordingly (Boundary Adjustment), so that the new boundary line was still within the original wide driveway, but provided at least one car width fully on 1017 Forest's property. Merdinian recorded the Boundary Adjustment on September 28, 2005. The Healys purchased 1017 Forest, as adjusted, from Merdinian on or about September 29, 2005.

In 2006, the Polks purchased 1019 Forest from Merdinian. While the Healys and Polks were neighbors, the Healys used the driveway situated fully on the property of 1017 Forest for access to their property and for parking their vehicles, and they did not use any portion of the driveway on 1019 Forest.

In 2011, Woodling purchased 1017 Forest from the Healys. From the time Woodling moved there, he would often use a portion of the 1019 Forest driveway for ingress and egress, which Woodling claimed was necessary to pull his vehicles in and out of 1017 Forest. The Polks also claimed Woodling parked cars on the 1019 Forest driveway, interfering with the Polks' use of their driveway. Subsequently, the Polks

2

removed the pavement on a strip of their driveway adjoining the boundary line. The Polks placed large rocks where the pavement had been, separating the two driveways and preventing crossover traffic.

Woodling filed the present suit against the Polks raising six claims. As relevant to this appeal,[1] in Count I of his petition, Woodling requested a declaratory judgment finding that the Easement Deed validly created an easement for Woodling's benefit over the portion of the driveway on which the Polks removed the pavement. In Count III, Woodling requested a permanent injunction ordering the Polks to restore the pavement they removed and to refrain from interfering with Woodling's easement rights in the driveway. In Count V, Woodling requested that the court find the Polks liable for trespass due to their interference with Woodling's easement rights.

The trial court granted summary judgment in favor of the Polks on Counts I and III, holding that the Easement Deed created no easement, because a common owner cannot create an easement over his or her own property. The trial court also granted the Polks' motion to dismiss Count V for failure to state a claim upon which relief could be granted. This appeal follows.

## Discussion

Woodling raises two points on appeal. First, he argues that the trial court erred in granting summary judgment, because it erroneously concluded as a matter of law that a developer may not create an easement in his or her own land. Second, Woodling argues that the trial court erred in dismissing Woodling's trespass claim because an easement

---

[1] The trial court disposed of Counts I, II, III, and V, and found no just reason for delay of an appeal of these rulings. The trial court stayed Counts IV and VI pending this appeal.

exists, and the Polks interfered with it by removing the pavement. Because we find no easement existed, Point I is dispositive.[2]

## Standard of Review

Our review of summary judgment is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment was entered, according the non-movant the benefit of all reasonable inferences from the record. Id.

## Existence of an Easement

The holding underlying the trial court's summary judgment on both Counts I and III of Woodling's petition was that Merdinian's Easement Deed never created an easement over 1019 Forest for the benefit of 1017 Forest because an owner may not create an easement in his or her own property. Our precedent requires we affirm the trial court's judgment.

The general principle comes from this Court's decision in Ball v. Gross, citing the "universal rule" that "a man cannot have an easement over his own land." 565 S.W.2d 685, 688 (Mo. App. 1978). This principle most often comes into play when the two properties affected by an easement, the dominant and servient estates, are merged under common ownership and possession. In such a case, the easement is generally extinguished. Maune v. Beste, 356 S.W.3d 225, 230 (Mo. App. E.D. 2011) (citing cases).

---

[2] The Polks separately argued regarding Point II that even if Woodling had easement rights, trespass does not lie because an easement is a non-possessory property interest, citing Schrader v. QuikTrip Corp., 292 S.W.3d 453, 458 (Mo. App. E.D. 2009). Because we find no easement existed, we do not reach this issue.

4

However, few cases discuss the reverse situation, in which a common landowner attempts to record an easement burdening one portion of his property for the benefit of another portion, usually in order to sell one of the portions. Courts have likewise found that no easement is created because an owner cannot grant himself property rights he already possesses. See, e.g., Bales v. Butts, 274 S.W. 679, 681 (Mo. 1925) (finding owner's attempt to create easement failed because "[s]o long as these lots belonged to the same owner, there could be no easement in favor of one lot, or servitude upon the other, for a man cannot have an easement over his own land") (internal quotation omitted).

In Ball, a party listed as the owner of a five-acre tract of land was actually a straw party for the defendant in the case, Blanche Gross. 565 S.W.2d at 688. The straw party attempted to record an easement for the benefit of Gross across the five-acre tract, but this Court found the easement invalid because the "real owner" of the five-acre tract was Gross, and an owner cannot create an easement in his or her own property. Id. This Court reasoned that "[i]n order to create an easement by deed there must be a dominant and servient estate, and 'they must not be lodged in the same person.'" Id. (quoting Marshall v. Callahan, 229 S.W.2d 730, 735 (Mo. App. 1950)). Here, Merdinian attempted to create an easement by deed when it owned both the purported dominant and servient estates, which was ineffective as a matter of law.

Woodling argues that an exception exists for a developer who is preparing multiple adjoining lots for individual resale. Based on Missouri precedent, there are essentially two options for a developer who desires to create easements over the land he or she will eventually subdivide and sell.[3]

---

[3] Some states have explicitly adopted exceptions for developers to the general rule that an easement cannot exist over one's own land. See, e.g., Allen v. Nickerson, 155 P.3d 595, 598-99 (Colo. App. 2006); Mattos

5

First, like any party creating an easement, a developer can include the easement in the individual deeds conveying each lot, each at the time title is severed. Because the dominant and servient estates will not be lodged in the same person at that point, the deed will suffice to create the easement. Second, more specific to a developer's circumstances, he or she can create easements through a subdivision plat, which is a to-scale map of numbered lots, delineating streets, alleys, common areas, and any portions of land reserved for public purposes. See Section 445.010-020.[4] As discussed below, easements contained in subdivision plats are routinely upheld by Missouri courts.

The best practice for developers is essentially to do both of these: (1) initially create easements in a recorded subdivision plat, and (2) then include identical easement language in each conveyance deed. This ensures buyers are alerted to the easements and ensures the easements are effectively created, exactly as intended, upon severance of title. Though there is no precise specificity requirement regarding the language creating an easement, it is best to be as specific as possible, which would include a metes and bounds description where feasible. See, e.g., Rosenbloom v. Grossman, 351 S.W.2d 735, 738-39 (Mo. 1961) (quoting 28 C.J.S. Easements § 24 at 677) ("[n]o particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, provided the language is certain and definite in its terms").

---

v. Seaton, 839 A.2d 553, 555 (R.I. 2004); cf. Michael v. Needham, 384 A.2d 473, 476 (Md. Ct. Special App. 1978) (describing "quasi-easement" as legal fiction developed to overcome premise that easement cannot exist over one's own land; quasi-easement results in implied easement upon division of land). However, to date, Missouri has not done so either by statute or common law, which our legislature or Supreme Court could easily do. As it stands now, Missouri recognizes only an easement by necessity: in order to find an easement upon severance of title that is implied by the actions and intentions of the parties, a party claiming such easement must also show that the easement is reasonably necessary for the fair enjoyment of the party's estate. See Meinhardt v. Luaders, 575 S.W.2d 213, 215 n.2 (Mo. App. 1978); Causey v. Williams, 398 S.W.2d 190, 197 (Mo. App. 1965).

[4] All statutory references are to RSMo. (2000), unless otherwise indicated.

However, where a plat contains an easement but the description of the easement is not contained in the conveyance deed, Missouri courts have still upheld the easement if the deed conveying the lot refers to the plat. See Pomona Mobile Home Park, LLC v. Jett, 265 S.W.3d 396, 399 (Mo. App. S.D. 2008) (citing Goad v. Bennett, 480 S.W.2d 77, 80 (Mo. App. 1972)) ("when a deed conveying any of the lots makes reference to the subdivision plat, "[t]he plat is deemed incorporated into the deed, creating an easement appurtenant which benefits the grantee . . . ."). There is even some precedent for upholding an easement based on the plat alone, regardless of any mention in the deed. For example, in Goad v. Bennett, the original owner of a subdivision had recorded a plat in which she "reserved to herself an easement for utilities over and across all roadways shown on the plat." 480 S.W.2d 77, 79 (Mo. App. 1972). This Court held that "*by this instrument* the original purchaser of plaintiffs' [lot] was granted an easement . . . 'running with the land.'" Id. (emphasis added). However, again, best practice is to include the easement in both the plat and the deed.

If a situation arises in which a developer attempts to include the easement in both the subdivision plat and the conveyance deed, but the two descriptions conflict with one another, the easement language in the conveyance deed controls. See Gardner v. Maffitt, 74 S.W.2d 604 (Mo. 1934) (finding purported easement created in plat ineffective and terms of easement contained in first conveyance deed controlled). This is because an owner is free to convey property "in any manner fairly agreed upon between [him] and the party to whom the first conveyance was made," and no easement is actually created until title severs between the dominant and servient estates. Gardner, 74 S.W.2d at 607 ("notwithstanding the recorded plat . . . , it cannot be said that there was an effective

7

grant of such easement or restriction until a severance of title occurred"). Because "[t]he intention of the parties is the paramount and controlling question," the wording in the conveyance deed between the two parties controls. Id.

Finally, if a developer does not include easements in the subdivision plat, he or she can create easements on an individual basis with each lot owner at the time of sale in the conveyance deeds, or even by contract after sale. See Rosenbloom, 351 S.W.2d at 738 ("While ordinarily easements are created by grant or prescription, they may be acquired by agreement"). Such easements will run with the land. Id.

Here, Merdinian did not follow any of these procedures for creating an easement. Woodling argues that the easement is valid because the Easement Deed was recorded and the conveyance deed to the Polks alerted them that they took 1019 Forest "subject to existing building lines, easements, conditions, restrictions, zoning regulations, etc., now of record, if any." There are three problems with this argument.

First, the Easement Deed was not a subdivision plat. It was rather a landowner's attempt to create an easement in his own property, which as stated, is insufficient as a matter of law. Second, while Woodling may argue that the later Boundary Adjustment was a subdivision plat, it makes no mention of an easement. This in fact may indicate the Healys did not intend to reserve an easement over 1019 Forest because they determined the Boundary Adjustment obviated the need for one. Finally, the language in the conveyance deed itself, that the Polks took "subject to existing building lines, easements, conditions, restrictions, zoning regulations, etc., now of record, if any," was not specific enough to create any easement. Rather, the easement language must be more certain and

8

in its terms than this standard form language. See id. at 738-39 (easement language must be "certain and definite in its terms").

Therefore, Woodling can claim no easement rights to any part of 1019 Forest. The trial court did not err in granting summary judgment in favor of Woodling on his claims for declaratory judgment and permanent injunction. Point denied.

## Conclusion

Because there is no easement, Woodling's claims on appeal must fail. We affirm.

_Gary M. Gaertner, Jr., Judge_

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

9