ATTORNEY FOR APPELLANT

Mark D. Johnson
Allen & Johnson, LLC
Salem, Indiana

ATTORNEY FOR APPELLEE

Robert R. Thomas
Thomas Law Group. LLC
Zionsville, Indiana



FILED

Apr 18 2017, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE
# COURT OF APPEALS OF INDIANA

Luther T. Collins,

*Appellant-Plaintiff,*

v.

Metro Real Estate Services LLC,

*Appellee-Defendant.*

April 18, 2017

Court of Appeals Case No.
88A05-1510-PL-1797

Appeal from the Washington
Circuit Court

The Honorable Larry Medlock,
Judge

Trial Court Cause No.
88C01-1401-PL-50

**Barnes, Judge.**

## Case Summary

[1] Luther Collins challenges the trial court's order finding an easement exists across Collins's property for the benefit of adjacent property owned by Metro Real Estate Services, LLC ("Metro"). We affirm.

## Issues

[2] Collins raises five issues for our review, which we consolidate and restate as:

   I.   whether there is an easement by grant over Collins's property; and

II.     whether there is an easement by implication over Collins's property.

# Facts[1]

[3]    This appeal concerns two parcels of land in Washington County. On October 24, 2003, Joseph Howell acquired the real estate identified on the tax map as parcel 7.05 ("the servient estate") from George Sivak, Regina Sivak, and Fred Cambron. *See* Appellant's App. p. 54. On November 3, 2003, Howell acquired the adjacent real estate identified on the tax map as parcel 2.02 ("the dominant estate") from Patrick Alexander and Connie Alexander. *Id.*



Appellant's App. p. 54.

[4]         At the time Howell purchased the [dominant estate], Howell's only access from a public right of way to the [dominant estate] was over the [servient estate] already owned by Howell. The

---

[1] We note that there is no transcript available in this matter. Instead, pursuant to Indiana Rule of Appellate Procedure 31, the parties filed a Joint Stipulated Verified Statement of Evidence.

> [dominant estate] had no other access to a public right of way but for over the [servient estate] to Mount Carmel Road.

Joint Stipulated Statement of Evidence p. 3. Howell lived on the servient estate and allowed a neighbor to cut hay on the dominant estate; the neighbor owned property adjacent to the dominant estate and accessed the dominant estate from his own land, not by way of the servient estate.

[5] Some time later, the servient estate was the subject of a foreclosure action, and Collins purchased it at a sheriff's sale; Collins closed on the property on March 27, 2009.[2] Prior to the sheriff's sale of the servient estate, Howell mortgaged the dominant estate to Old Capitol Mortgage. In order to "facilitate" the Old Capitol mortgage, Howell "granted an Easement to himself over the [servient estate] to allow access to the [dominant estate]." *Id.* Howell recorded the easement on June 23, 2008. The Old Capitol mortgage was recorded on July 23, 2008. "Collins testified that neither Howell nor anyone else used the Easement area to access the [dominant estate] and both ends of the Easement area were fenced with no gate."[3] *Id.* Collins also testified that, "Howell accessed the [dominant estate] on and across the [servient estate] after Collins

---

[2] The joint stipulated statement of evidence does not indicate who held the mortgage on the servient estate or when it was executed. But the special warranty deed transferring ownership of that property to Collins lists Wells Fargo Bank, National Association, as the grantor. Appellee's App. p. 3.

[3] We note that the joint stipulated statement of evidence does not provide a time frame for this non-use of the easement.

purchased the [servient estate] and at no time did Collins object to Howell doing so." *Id.* at 4.

[6] The dominant estate was also the subject of a foreclosure action, and, on May 11, 2012, Metro purchased it. Collins objected to Metro's use of the easement over the servient estate and, in January 2014, filed a complaint to quiet title. The matter was tried, and the trial court entered its judgment for Metro on July 31, 2015. Collins then filed a motion to correct error, which the trial court denied on September 24, 2015. Collins now appeals.[4]

## Analysis

### I.    *Standard of Review*

[7] We review the denial of a motion to correct error for an abuse of discretion. *Otter Creek Trading Co., Inc. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217, 226 (Ind. Ct. App. 2016), *trans. denied*.

> A trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. The trial court's decision comes to us cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. In making our determination, we may neither reweigh the evidence nor judge the credibility of

---

[4] We note that, on March 21, 2016, Metro sold the dominant estate to individuals who also own land adjacent to the dominant estate. As a result of that purchase, Collins notified this court of the change of interested parties and moved for a substitution of party. Metro objected, and this court denied Collins's motion. Because the sale of the dominant estate took place after the trial court heard evidence in this matter, the fact of that transaction is not part of the record on appeal. Both parties refer to that transaction in their briefs. Because that information is outside the record, we do not consider it in reaching our decision.

witnesses. Instead, we look at the record to determine if: (a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's order has been made by the appellant.

*Id.* (citation omitted) (quotations omitted).

[8] Where, as here, the trial court issues findings of fact and conclusions thereon sua sponte, "the findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial."[5] *Samples v. Wilson*, 12 N.E.3d 946, 949-50 (Ind. Ct. App. 2014). We apply a two-tier standard of review to the sua sponte findings and conclusions thereon. *Id.* at 950. We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside findings and conclusions:

only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. In conducting our review, we consider only the evidence favorable to the judgment

---

[5] We note that the parties seem to disagree regarding whether the trial court issued findings of fact and conclusions thereon. Collins directs us to authority regarding the standard of review for cases in which the trial court issued findings of fact and conclusions thereon. *See* Appellant's Br. p. 6. Metro, however, contends that "neither party requested special findings, nor did the trial court make findings *sua sponte*. Thus, Appellant appeals from a general judgment." Appellee's Br. p. 7. We agree with Collins that the trial court entered sua sponte findings and review the case accordingly.

and all reasonable inferences flowing therefrom. We will neither reweigh the evidence nor assess witness credibility.

*Id.*

[9] The trial court's July 31, 2015, order states:

> In this case, Joseph Howell attempted to create an easement by grant through [the servient estate] for the benefit of [the dominant estate]. At the time of this grant in June 2008, Howell owned both pieces of property . . . . Howell filed a properly notarized document that described the easement and declared that it "shall run with the land and shall extend to the grantee's heirs and assigns."
>
> * * * * *
>
> The language used in the official grant is interpreted to mean his intent was that the easement be appurtenant. First, the grant includes the language "run with the land" which almost certainly implies that Howell meant for the easement to be appurtenant . . . .
>
> The easement in this case was properly created by express deed and properly filed, making it a valid easement. Further, the language used in the grant was meant to establish an easement appurtenant, meaning it runs with the land and is available for use by subsequent landowners, including Metro Real Estate.

Appellant's App. pp. 6-7 (no citations in original).

[10] The trial court's September 24, 2015, order denying Collins's motion to correct error states:

1. At the time that Joseph Howell granted the easement appurtenant he did own both the [dominant] and [servient] parcels of land.

2. It is true that the law precludes the same owner of a unified parcel of land to grant a lesser right to himself for his own property. *John Hancock Mut. Life Ins. Co. v. Patterson*, 2 N.E. 188, 190 (1885).

3. However, the owner of the unified lands may arrange that, upon severance of the parcels, an easement be created for the benefit of one "[w]here during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance, is in use, and is reasonably necessary for the fair enjoyment of the other." *Id.* at 191.

4. Howell's attempt to grant the easement when he owned both parcels of land represents such an arrangement for the implication of an easement.

5. Further, when a parcel is landlocked and an easement of necessity is appropriate, the law requires that the easement must be created across the grantor's remaining land. *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 836 (Ind. Ct. App. 2001).

6. The fact that the parcels of land were in foreclosure at the time of this arrangement "makes no difference." *Id.* at 838.

Appellant's App. pp. 8-9 (third alteration in original).

## II. Easements Generally

Collins argues that the trial court abused its discretion by determining that an easement exists over his property. In Indiana, an easement can be created in three ways: by grant, prescription, or implication. *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 835 (Ind. Ct. App. 2011). There are two types of easements. "[A]n easement is appurtenant if it passes (by conveyance or inheritance) with the dominant tenement[.]" *Id.* "[A]n easement is in gross if it is personal to the owner of the dominant tenement." *Id.* "An easement is never presumed to be in gross when it can be fairly construed to be appurtenant to the land." *Id.* (quotations omitted) (citation omitted). In this case, the parties dispute whether Metro has an easement either by grant or by implication over Collins's property.[6]

---

[6] Metro argues that Collins "waived any right he had to claim the Easement was not a valid grant of an easement when he closed on the purchase of the [servient estate]." Appellee's Br. p. 13. To support that argument, Metro directs us to the purchase agreement Collins executed when he purchased the servient estate. Therein, according to Metro, Collins agreed to "'waive any and all title objections'" if he proceeded to closing on the servient estate. Appellee's Br. p. 13. Metro did not provide a citation to the record to support this quote as required by Indiana Rule of Appellate Procedure 46. We believe it came from page eight of the addendum to the purchase agreement, which is located at Appellee's App. p. 26, but we are unable to locate the precise language Metro purports to quote. Our Rules of Appellate Procedure require citations to the Appendix or Record; but, as a practical matter, when a party directs us to language from a contract that the party believes is vital to its argument, it is important that we be able to locate that language in the record.

Within its waiver argument, Metro cites to one case that generally defines waiver. We note that the purchase agreement was executed by Collins and the lender from whom he purchased the servient estate. This litigation, however, arose between Collins and Metro, the foreclosure purchaser of the dominant estate. Metro was not a party to the purchase agreement. With the exception of the authority mentioned above, Metro does not cite to any authority supporting his unique argument that Collins waived his right to litigate issues related to the servient estate arising against one who was not a party to the purchase agreement. We conclude Metro waived this argument.

### III. Easement by Grant

Collins first contends no easement over his property exists for the benefit of Metro because Howell's attempt to grant himself an easement was unsuccessful. Collins argues that the doctrine of merger extinguished the easement and directs us to cases that cite the general proposition that one cannot grant himself or herself an easement in land to which he or she has title. *See William C. Haak Trust*, 949 N.E.2d at 837 n.1 (quoting *John Hancock Mut. Life Ins. Co. v. Patterson*, 2 N.E. 188, 190, 103 Ind. 582, 586 (1885)); *Borovilos Restaurant Corp. II v. Lutheran Univ. Ass'n, Inc.*, 920 N.E.2d 759, 765 (Ind. Ct. App. 2010) (noting "a person may not have an interest in his or her own land because an easement merges with the title," and, "while both are under the same ownership the easement does not constitute a separate estate there can be no easement so long as there is unity of ownership of the properties involved") (citation omitted), *trans. denied*; *Patterson*, 2 N.E. at 190, 103 Ind. at 586 ("[T]he owner can not have an easement in land of which he has the title. The inferior right is merged in the higher title. By the common law it is said to be extinguished by the unity of title.").

In its order denying Collins's motion to correct error, the trial court cited *Patterson*, 2 N.E. at 191, 103 Ind. at 586, for the proposition that a valid easement is created "[w]here during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance, is in use, and is reasonably necessary for the fair enjoyment of the other." Appellant's App. p. 8. The trial court then found,

"Howell's attempt to grant the easement when he owned both parcels of land represents such an arrangement for the implication of an easement." *Id.* We note that isolating that statement in *Patterson* from the context of the paragraph in which it is contained may cause confusion. We provide a larger excerpt of the opinion for clarification:

> During the unity of title the owner may subject one of several tenements, or adjoining parcels of land, to such arrangements, incidents, or uses with respect to the other as may suit his taste or convenience, without creating an easement in favor of the one as against the other. This is so because the owner cannot have an easement in land of which he has the title. The inferior right is merged in the higher title. By the common law it is said to be extinguished by the unity of title. In the civil law it is lost by "confusion." By both, if an easement existed before the unity of seizin it may revive upon a severance; or if none existed, such arrangements may be adopted while the seizin is united, as that upon a severance an easement will be created by implication of law. Where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance, is in use, and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use.

*Patterson*, 2 N.E. at 190-91, 103 Ind. at 586.

[14]  We read this quote to stand for the proposition that one may not simultaneously hold title to and an easement in the same piece of property. If, however, under very specific circumstances, an easement existed *before* ownership of and an easement over that property were united in one owner, the

easement may be revived after that union is severed. That is not the situation presented by this case, and we conclude the trial court abused its discretion by relying on an isolated quote from *Patterson* to support its order denying Collins's motion to correct error.

[15] It appears, however, that none of the facts of the cases to which Collins cites for the general merger-of-title principle are analogous to the facts of this case, either. The facts of this case are rather unique, and neither party directs us to a comparable Indiana case.

[16] *Woodling v. Polk*, 473 S.W.3d 233 (Mo. Ct. App. 2015), however, is on point. In *Woodling*, a real estate developer owned two adjacent residential lots—1017 Forest Avenue and 1019 Forest Avenue. The properties shared one driveway, which was situated on 1019 Forest's lot. The developer executed and recorded an "Easement Deed" to facilitate the use of the driveway on 1019 Forest by the "present and future owners of 1017 Forest." *Id.* at 234. The deed listed the developer as both the grantor and grantee of the easement.

[17] In 2005, the Healys purchased 1017 Forest. Because they were concerned about the easement, they asked the developer to adjust the boundary line between the two properties "so that the driveway of 1017 Forest would be completely situated on 1017 Forest's property." *Id.* The developer obliged, and "the new boundary line was still within the original wide driveway, but provided at least one car width fully on 1017 Forest's property." *Id.* In 2006, the Polks purchased 1019 Forest from the developer. While the Polks and

Healys were neighbors, the Healys exclusively used the portion of the driveway situated on their property.

[18] In 2011, Woodling purchased 1017 Forest from the Healys. Woodling used a portion of the driveway located on the Polks' property to pull vehicles in and out of his own property. Woodling also parked cars on the 1019 Forest driveway. The Polks removed a strip of pavement from their portion of the driveway adjoining the boundary line and replaced it with large rocks, thereby separating the two driveways and preventing crossover traffic.

[19] On appeal, the Missouri Court of Appeals cited the "universal rule that a man cannot have an easement over his own land." *Id.* at 236 (quotations omitted) (citation omitted). The court explained:

> This principle most often comes into play when the two properties affected by an easement, the dominant and servient estates, are merged under common ownership and possession. In such a case, the easement is generally extinguished.
>
> However, few cases discuss the reverse situation, in which a common landowner attempts to record an easement burdening one portion of his property for the benefit of another portion, usually in order to sell one of the portions. Courts have likewise found that no easement is created because an owner cannot grant himself property rights he already possesses.

*Id.* The Court held that the developer's attempt "to create an easement by deed when it owned both the purported dominant and servient estates" was "ineffective as a matter of law." *Id.*

[20]    We reach the same conclusion in this case. Howell owned both the dominant and servient estates at the time he recorded the easement. Because one cannot have an easement over land he already owns, Howell's recording had no legal effect.

[21]    Metro concedes that the merger doctrine "generally provides that a lesser estate merges into a greater estate." Appellee's Br. p. 9. Nonetheless, Metro urges us to adopt "the mortgage exception to the merger doctrine," because "the [e]asement was necessary to facilitate financing of the [dominant estate] and therefore served an additional function defeating the merger doctrine." *Id.* at 11. "Under this exception, the mortgage of the dominant estate is protected from losing its interest in an easement otherwise extinguished when fee title to the dominant estate and fee title to the servient estate are united." *Id.* at 11 (citing, generally, *Pergament v. Loring Prop., LTD*, 599 N.W.2d 146 (Minn. 1999). Metro states,

> it was clearly the intent of Howell that the [e]asement not merge into the fee. Howell obtained a mortgage on the [dominant estate] (separate from the mortgage on the [servient estate]) after granting the [e]asement to allow access to the [dominant estate]. The [e]asement provided substantial value to the Metro Parcel as the lender would not have loaned the money on a soon to be landlocked parcel.

*Id.* at 12.

[22]    Metro concedes, however, that it found "no Indiana case applying the mortgage exception to the merger doctrine relating to an easement . . . ." Absent

controlling authority permitting us to apply the mortgage exception in this case, and in light of the long-standing, widely-accepted tenet that an estate owner cannot grant himself property rights he already possesses, our conclusion remains unchanged. Howell did not record a valid easement over his own property to benefit himself.[7]

## IV.    *Implied Easement*

[23]    Collins next argues that no implied easement by necessity or prior use exists across the servient estate.

> Indiana law further subdivides implied easements into easements of necessity and easements by prior use . . . .
>
> An easement of necessity will be implied only when there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without any access to a public road. On the other hand, an easement of prior use will be implied where, during the unity of title, an owner imposes an apparently permanent and obvious servitude on one part of the land in favor of another part and the servitude is in use when the parts are severed . . . if the servitude is reasonably necessary for the fair enjoyment of the part benefited. Unlike a landowner requesting an easement by necessity, a landowner requesting an easement by prior use does not need to show absolute necessity. The focus of a claim for an easement by prior use is the intention

---

[7] Collins also contends the decree of foreclosure related to the servient estate erased the recorded easement because "[t]he title of a purchaser at a foreclosure sale relates back to the date of the foreclosed mortgage . . . [and] [a]ny easement granted . . . by Howell after the date of the mortgage, and certainly after the decree of foreclosure, would have been 'wiped' by the foreclosure and Sheriffs [sic] sale." Appellant's Br. pp. 8-9 (no citation in original). Because we conclude Howell did not record a valid easement, we need not address this issue.

for continuous use, while the focus of a claim for an easement by necessity is the fact of absolute necessity.

*William C. Haak Trust*, 949 N.E.2d at 835-36 (quotations omitted) (citations omitted) (second ellipses in original).

[24] Collins contends no easement by prior use can be implied in this case. We conclude that the record before us is not sufficient to support a finding of an easement by prior use. The Joint Stipulated Statement of Evidence contains contradictory statements in this regard. The parties aver that Collins testified, "neither Howell nor anyone else used the Easement area to access the [dominant estate] and both ends of the Easement area were fenced with no gate," and that "Howell accessed the [dominant estate] on and across the [servient estate] after Collins purchased the [servient estate] and at no time did Collins object to Howell doing so . . . ." Joint Stipulated Statement of Evidence pp. 3-4. Without more specific evidence regarding the use or non-use of the easement and the timing of such use, we cannot conclude an easement by prior use exists over the servient estate.

[25] Collins next contends that no easement of necessity runs over the servient estate.[8] We note that the trial court's July 31, 2015, order did not conclude

_____

[8] Collins challenges what he characterizes as the trial court's distinct conclusions that an easement by prior use and an easement by necessity run over the servient estate. He argues that the trial court may not "rule in the alternative and issue two mutually exclusive rulings in the same case." Appellant's Br. p. 10. In light of what he claims is an "alternative ruling," Collins requests that we regard paragraph five of the trial court's September 24, 2015, order, in which the trial court concludes there is an easement of necessity, "as dicta,

there exists an easement by necessity over the servient estate.[9]  It did, however, conclude in its order denying Collins's motion to correct error: "5.  Further, when a parcel is landlocked and an easement of necessity is appropriate, the law requires that the easement must be created across the grantor's remaining land."  Appellant's App. p. 9.

[26]    An easement of necessity will be implied when there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without access to a public road.  An easement of necessity may arise, if ever, only at the time that the parcel is divided and only because of inaccessibility then existing.  To demonstrate that an easement of necessity should be implied, a plaintiff must establish both unity of title at the time that tracts of land were severed from one another and the necessity of the easement.

* * * * *

To demonstrate that the easement is of necessity, a plaintiff must demonstrate more than that the easement would be beneficial or convenient.  If the plaintiff has another means of accessing his

---

rather than part of the conclusion of the court."  *Id.*  Collins does not cite to any authority to support his contentions, and has thus waived those arguments.  Waiver notwithstanding, we conclude under the general judgment standard that there exists an implied easement of necessity.  We therefore need not determine whether the trial court "issue[d] two mutually exclusive rulings" or whether doing so would be reversible error.  *Id.*

[9] Collins argues that the trial court erred by "amend[ing] its judgment" in its September 24, 2015, order on Collins's motion to correct error.  Appellant's Br. p. 11.  Citing to Indiana Rule of Trial Procedure 52(B), Collins contends "the trial court can, on its own motion, amend its judgment, [but] it may do so only before a motion to correct errors is filed."  *Id.*  We reject this argument because the trial court's September 24, 2015, order was a ruling on Collins's motion to correct error and was governed by Indiana Rule of Trial Procedure 59.  The order did not purport to amend the July 31, 2015, order, and, in any event, Collins directs us to no authority prohibiting the trial court from restating, amending, or expanding its original order in a subsequent order on a motion to correct error.  Collins has thus waived this argument.

land, he may not claim a right to pass over the land of another. This rule controls even if the alternate means of access would be more difficult or expensive for the plaintiff.

*Cockrell v. Hawkins*, 764 N.E.2d 289, 292-93 (Ind. Ct. App. 2002) (quotations omitted) (citations omitted). More simply put, demonstrating that a parcel is landlocked is sufficient to prove necessity. *See Kopetsky v. Crews*, 838 N.E.2d 1118, 1126 n.4 (Ind. Ct. App. 2005), and *Hysell v. Kimmel*, 834 N.E.2d 1111, 1115 n.2 (Ind. Ct. App. 2005), *trans. denied*.

[27] The classic, and most straightforward, example of an easement of necessity is this:

> if a landowner conveys a piece of real estate that is completely surrounded by the landowner's remaining property, then we imply that the conveyance includes an easement across the landowner's remaining property. In addition, if a conveyed piece of property has no outlet to a public road except by going across the grantor's remaining land or across the land of a stranger, the law implies a way of necessity over the grantor's remaining land because an easement of necessity cannot arise against the lands of a stranger.

*Id.* at 293 (quotation omitted) (citation omitted).

[28] This case, of course, differs substantially from the above example. The parties dispute whether the purported easement in this case meets the requirements for an easement by necessity discussed above. Collins first argues that, "[t]he trial court at no time found that the parcel was landlocked or that an easement of necessity was appropriate." Appellant's Br. p. 13 (emphases omitted)

(quotation omitted) (no citation in original). Citing the transfer history of the dominant and servient estates, Collins further argues, "[w]hile it is true Howell at one point owned both [the dominant and servient estates], there was no unity of title because the two parcels were mortgaged to separate lenders, retained separate property tax numbers, and were never combined in the county records or otherwise." Appellant's Br. pp. 13-14. Metro, on the other hand, asserts that the dominant estate was landlocked. To the extent that the trial court's order does not make specific findings of fact or conclusions thereon with regard to this issue, we reiterate that a general judgment standard applies. *Samples*, 12 N.E.3d at 949-50.

[29] The Joint Stipulated Verified Statement of Evidence provides sufficient evidence to affirm the trial court's order. Therein, the parties stated:

> 3. Unity of title for both the [dominant and servient estates] was previously vested in Joseph Howell . . . .

> 4. At the time Howell purchased the [dominant estate], Howell's only access from a public right of way to the [servient estate] was over the [dominant estate] already owned by Howell. The [dominant estate] had no other access to a public right of way but for over the [servient estate] to Mount Carmel Road.

Joint Stipulated Statement of Evidence pp. 3-4. Metro's subsequent purchase of the dominant estate does not change the fact that the easement at issue is, by definition, one of necessity. That the dominant and servient estates each changed ownership after their titles were unified in Howell does not change the fact that, as the parties stipulated, there existed unity of title. Nor does it

change the fact, to which the parties also stipulated, that the dominant estate was landlocked.[10]  In light of this evidence, we conclude the trial court did not abuse its discretion by concluding an easement of necessity exists over the servient estate for the benefit of the dominant estate.

[30] Finally, Collins requests, "should this Court find that an easement of necessity exists across the [servient estate], then the case should be remanded with instructions to allow Mr. Collins to specify the route of the easement." Appellant's Br. p. 17.  Collins contends that, even if an easement by necessity does exist, "it is not the 150 foot wide easement purported to be granted by Howell." *Id.* at 14.  We agree that "[e]asements are limited to the purpose for which they are created." *Whitt v. Ferris*, 596 N.E.2d 230, 233 (Ind. Ct. App. 1992).  In *Whitt*, this court concluded the trial court erred by finding an easement of necessity that was sixty feet wide because the easement was "necessary only as a way to access [the dominant estate]." *Id.*  In light of that purpose, "access over the twenty foot wide graded roadway through the middle of the Disputed Parcel, coupled with sufficient footage over the grassy area on the south side of the road" was all that was necessary." *Id.* at 233-34.  This court stated, "There is no need to burden the servient estate further by allowing use of the grassy areas on the sides of the road for parking." *Id.* at 234.

---

[10] We again note that, while this appeal was pending, Metro sold the dominant estate.  The parties tell us that the new owners of the dominant estate also own property adjacent thereto.  To be clear, we decide this case based on the evidence presented to the trial court and make no prediction regarding if or how the subsequent conveyance of the dominant estate affected the easement at issue.

In this case, there is no evidence regarding the burden that is necessary on the servient estate. The parties' Joint Stipulated Statement of Evidence offers little information other than that Howell granted himself an easement "to allow access to the [dominant estate]." Joint Stipulated Statement of Evidence p. 3. The text of the easement Howell attempted to create, to the extent it can viewed as evidence, is similarly unhelpful. That document contains nothing more than a catchall statement describing the (attempted) easement as, "[t]he right of ingress and egress at any time over and upon the above described easement for any use and purpose deemed necessary by the grantee including a driveway, and the construction and maintenance of water and electric utilities." Appellant's App. p. 52.

Based on the record before us, the most we can discern is that the dominant estate is landlocked, and an easement over the servient estate is necessary to guarantee access to a public roadway. We know nothing, for instance, about the layout or terrain of the parcels and reach no conclusion regarding whether a 150-foot-wide easement is necessary.

# Conclusion

The trial court did not abuse its discretion by concluding an easement exists for Metro's benefit over Collins's property. We affirm.

Affirmed.


Kirsch, J., and Robb, J., concur.