**FILED**

Mar 20 2018, 8:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Richard Wayne Greeson
Connersville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Windgate Properties, LLC, | March 20, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 13A01-1706-PL-1453 |
| v. | Appeal from the Crawford Circuit Court |
| Chris Sanders, | The Honorable Sabrina R. Bell, Judge |
| *Appellee-Defendant* | Trial Court Cause No. 13C01-1505-PL-16 |

**Altice, Judge.**

**Case Summary**

[1] WindGate Properties, LLC, (WindGate) and Chris Sanders each purchased multiple tracts of land at a tax sale. These tracts all had the same owner prior to the tax sale, and the tax sale left landlocked one tract purchased by Sanders and two purchased by WindGate. In response to a quiet title action filed by WindGate, Sanders asserted that he had an implied easement by necessity across one of WindGate's tracts. Following a bench trial, the trial court issued an order quieting title to WindGate subject to an implied easement by necessity for the benefit of Sanders. WindGate's arguments on appeal are numerous, but they all essentially boil down to a claim that easements should be established over adjacent properties to the north rather than WindGate's property.

[2] We affirm.

## Facts & Procedural History

[3] Opportunity Options, Inc., owned a significant amount of undeveloped real estate in Crawford County that was sold at a tax sale on September 27, 2013. WindGate and Sanders, as well as others, purchased parcels at this sale. Relevant to this appeal, WindGate and Sanders each purchased a parcel that was divided into two non-adjacent tracts. The four tracts – Sanders 1 (4.45 acres), WindGate 1 (49.014 acres), Sanders 2 (28.24 acres), and WindGate 2 (34.142 acres) – were situated like puzzle pieces as follows:



*Appendix Vol. 2* at 105 (modified from original). Sanders 1 had access to a public roadway at its northwest corner, but the other three tracts were landlocked following the tax sale. None of these landlocked tracts had any recorded easements for ingress or egress.

[4] The real estate to the north of Sanders's and WindGate's parcels (the Northern Real Estate) was "[a]t some point in time" all owned by Opportunity Options. *Transcript* at 39. The record is vague regarding the Northern Real Estate, but the record establishes that sometime prior to the tax sale, likely at different times, the land was divided and sold to various people.[1] Throughout the Northern Real Estate, Opportunity Options had built dirt and gravel roads to access the land from public roadways. Part of one of these private roads runs

---

[1] WindGate's repeated assertion on appeal that all of the Northern Real Estate adjacent to the parcels in question is now owned by Turner Corn is not borne out in the record. The evidence establishes only that Corn owns a portion of the adjacent land directly north of Sanders 1. *See Exhibits Vol. 1*, Plaintiff's Exhibit B (area designated as "Trent" is now owned by Corn). The ownership of the various parcels adjacent to and directly north of WindGate 1 and Sanders 2 is not clearly established in the record, nor is the ownership of the more-northern lots along the private road leading north to Tower Road, a public road (not pictured above).

along the northern boundary of Sanders 2 and another runs north to Tower Road.

[5] On May 22, 2015, WindGate filed a complaint to quiet title in the parcel comprised of WindGate 1 and WindGate 2.[2] Along with Opportunity Options and various lienholders, WindGate named as defendants the following adjacent property owners: Larry and Deborah Lynch, Patsy and Louis Humphrey, Turner Corn, Trent Seyeyasu (sic), Sherry Applegate, and Sanders.

[6] On July 30, 2015, Sanders filed his answer to the complaint and claimed an easement across WindGate's property. Sanders did not file a counterclaim. In his answer, however, he requested that the court "enter an order declaring his easement across the real estate of the Plaintiff to be exclusive and superior to all claims of the Plaintiff and other Defendants". *Appendix Vol. 2* at 24. Because the other adjacent property owners did not answer the complaint, these defendants, as well as others, were defaulted in February 2016. Thus, Sanders remained the only defendant property owner opposing the quiet title action.

[7] Thereafter, WindGate and Sanders both sought summary judgment, which the trial court denied in June 2016 following a brief hearing. The trial court determined that a genuine issue of material fact existed regarding whether an implied easement by necessity – across Windgate 1 for the benefit of Sanders 2

---

[2] WindGate filed a separate complaint to quiet title to another parcel purchased at the tax sale. The two actions were consolidated below, but WindGate does not appeal the resolution of that claim.

– resulted from the tax sale. The court made no determination with regard to WindGate's argument at the summary judgment hearing that Sanders needed to "take a positive action to establish that easement by necessity, rather than simply coming in and denying the quiet title in this case." *Transcript* at 13.

[8] The matter proceeded to a bench trial on February 10, 2017. At the beginning of the hearing, the court stated: "Counsel and the Court have spoken briefly in chambers and counsel, correct me if I am wrong, but we have agreed to try the issue of whether or not there is an easement by necessity across [WindGate's property]." *Id*. at 16. Accordingly, despite Sanders's failure to file a counter claim, the parties agreed to litigate the easement issue.

[9] WindGate's position at trial was that Sanders had an easement by necessity but not over WindGate's land. According to WindGate, said easement should be established instead over the gravel/dirt roads through parcels in the Northern Real Estate. Reggie Timberlake, the county surveyor, testified that there were multiple ways for Sanders to access Sanders 2 but that all would require crossing private land. Specifically, if Sanders wanted to access Sanders 2 from the north, "he's going to have to gain permission from the property owners at that point and time". *Id*. at 38. Troy Tarvin, WindGate's property manager, explained that different individuals owned parcels in the Northern Real Estate and that WindGate plans to negotiate easements through several of these properties to reach Tower Road. Tarvin indicated that he had already approached Corn to discuss an easement but had yet to approach other property owners over which the gravel road passed.

In response, Sanders agreed that using the private road over the Northern Real Estate to Tower Road might be the easiest path to a public road from Sanders 2. But Sanders's counsel argued, "we have no legal right to force these people to give us access. The only legal right we have to force someone to give us access to this property is Windgate, the Plaintiff." *Id.* at 78.

After taking the matter under advisement, the trial court issued its order, along with findings of fact and conclusions of law, on March 24, 2017. The trial court determined that an implied easement of necessity was created at the time WindGate and Sanders purchased the properties at the tax sale because the sale resulted in a severance of the unity of ownership and left Sanders 2 without access to a public road. Further, the court rejected WindGate's argument that Sanders should pursue an alternate, more-reasonable easement from the landowners to the north. The trial court, therefore, quieted title to WindGate in fee simple absolute, subject to an easement for ingress and egress benefiting Sanders 2.[3] Following an unsuccessful motion to correct error, WindGate now appeals.

## Discussion & Decision

The trial court's judgment in this case included findings and conclusion pursuant to Trial Rule 52(A). The findings or judgment are not to be set aside

---

[3] The court ordered the parties to negotiate the location and width of the easement, which "shall be reasonable by the least intrusive means." *Appendix Vol. 2* at 18.

unless clearly erroneous, and we give due regard to the trial court's ability to assess the credibility of witnesses. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). On review, we first consider whether the evidence supports the factual findings and then consider whether the findings support the judgment. *Id*. Further, "while we defer substantially to findings of fact, we do not do so to conclusions of law." *Id*.

[13] We also recognize that Sanders has not filed an appellee's brief. As a result, we will not undertake the burden of developing arguments on his behalf and will reverse if WindGate establishes prima facie error. *See Duty v.* CIT *Group/Consumer Fin., Inc.*, 86 N.E.3d 214, 215 (Ind. Ct. App. 2017). Prima facie, in this context, means at first sight, on first appearance, or on the face of it. *Id*. This standard, however, "does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required." *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015).

[14] WindGate does not dispute that the tax sale resulted in a severance of the unity of ownership of the four adjacent tracts now owned by WindGate and Sanders. Nor does WindGate disagree that this severance left Sanders 2 without access to a public road. WindGate argues, however, that no evidence was presented regarding two (alleged) elements: (1) whether Opportunity Options's use of part of the land to benefit another part (a quasi-easement) was apparent and continuous and (2) whether at severance it was necessary to continue the preexisting use for the benefit of the dominant estate.

[15] WindGate's arguments represent a fundamental misunderstanding of the elements required to establish an easement implied by necessity. It is well established that Indiana law recognizes two types of implied easements – easements implied by necessity and easements implied by prior use. *See Indiana Reg'l Recycling, Inc. v. Belmont Indus., Inc.*, 957 N.E.2d 1279, 1283 (Ind. Ct. App. 2011), *trans. denied*; *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 835-36 (Ind. Ct. App. 2011).

> An analysis of the two theories demonstrates that a claim for an easement by necessity and a claim for an easement by prior use, while similar in origin, are separate and distinct claims. An easement of necessity will be implied only when there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without any access to a public road. On the other hand, an easement of prior use will be implied "where, during the unity of title, an owner imposes an apparently permanent and obvious servitude on one part of the land in favor of another part and the servitude is in use when the parts are severed ... if the servitude is reasonably necessary for the fair enjoyment of the part benefited." *Hysell v. Kimmel*, 834 N.E.2d 1111, 1114 (Ind. Ct. App. 2005), *trans. denied*. Unlike a landowner requesting an easement by necessity, a landowner requesting an easement by prior use does not need to show absolute necessity. The focus of a claim for an easement by prior use is the intention for continuous use, while the focus of a claim for an easement by necessity is the fact of absolute necessity.

*Pardue v. Smith*, 875 N.E.2d 285, 291 (Ind. Ct. App. 2007) (some citations omitted). Sanders asserted an easement by necessity, not an easement by prior use. Accordingly, the trial court properly relied on the law relating to implied easements of necessity.

[16] "An easement of necessity will be implied when 'there has been a severance of the unity of ownership of a tract of land in such a way as to leave one part without access to a public road.'" *William C. Haak Trust*, 949 N.E.2d at 836 (quoting *Whitt v. Ferris*, 596 N.E.2d 230, 233 (Ind. Ct. App. 1992)). Such an easement may arise, if ever, only at the time that the land is divided and only because of inaccessibility then existing. *Id*. "To demonstrate that an easement of necessity should be implied, a plaintiff must establish both unity of title at the time that tracts of land were severed from one another and the necessity of the easement." *Id*. Sanders did just that, clearly making a prima facie showing in support of his claimed implied easement of necessity across WindGate 1 for the benefit of Sanders 2.

[17] Acknowledging that the tax sale resulted in Sanders 2 being landlocked, WindGate argued below that easements should be instead established over the preexisting dirt and gravel roads running through the Northern Real Estate. In other words, WindGate argued that Sanders 2 had an implied easement by prior use over the properties of various other landowners. But aside from the parcel owned by Corn, the record does not reflect the ownership of each of the other parcels through which the private roads run or whether all of these owners purchased the property from Opportunity Options at the same time.[4]

---

[4] The trial court clarified the evidence after counsel for WindGate asserted, during closing statements, that all of the land (the Northern Real Estate, WindGate's property, and Sanders's property) was purchased at the same tax sale. Sanders objected, and the court sustained the objection, indicating that while there was

[18] As we observed in *Indiana Regional Recycling, Inc.*, "[i]t is not the court's place to require a landowner to find an alternate easement in order to avoid inconveniencing a servient parcel burdened with an easement." 957 N.E.2d at 1284. Moreover, the record does not support a conclusion that Sanders is entitled to an easement by prior use over the properties in the Northern Real Estate.[5] In fact, WindGate's property manager testified that WindGate, whose land was also landlocked as a result of the tax sale, did not have an easement over any of the Northern Real Estate and that he was attempting to negotiate easements with the various landowners to be able to access Tower Road via the gravel and dirt roads.

[19] Based on the record before us, we conclude that an easement on WindGate 1 was necessary because Sanders had no other means of accessing his land. *See id.* at 1283-84. As unity of ownership is undisputed, the trial court properly granted Sanders an easement by necessity for the benefit of Sanders 2 and burdening WindGate 1.

[20] Judgment affirmed.

---

testimony that all the land was owned by Opportunity Options, there was "no testimony as to when it was sold, how it was sold". *Transcript* at 81.

[5] The trial court noted in its order that these other landowners were not parties to this action. WindGate asserts that it included all adjacent owners as defendants and that they were defaulted. Although their party status does not control the outcome of this appeal, we observe that the parties were defaulted well before WindGate and Sanders agreed to litigate the easement issue, which effectively allowed a counterclaim that was never officially filed.

May, J. and Vaidik, C.J., concur.