## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2018, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David E. Baum
David E. Baum Law Office, P.C.
Chesterton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.B.,<br>*Appellant-Respondent,*<br><br>v.<br><br>K.F.,<br>*Appellee-Petitioner.* | May 9, 2018<br><br>Court of Appeals Case No.<br>17A-PO-3043<br><br>Appeal from the Porter Superior Court<br><br>The Honorable Roger V. Bradford, Judge<br><br>Trial Court Cause No.<br>64D01-1703-PO-2845 |

**Najam, Judge.**

## Statement of the Case

[1] S.B. appeals the trial court's issuance of an order for protection on behalf of

K.F. S.B. presents two issues for our review, which we restate as a single issue,

namely, whether the trial court's issuance of the order for protection was clearly erroneous. We affirm.

## Facts and Procedural History

[2] On December 26, 2016, S.B.'s wife, K.B., told S.B. that she had to go to work, and she left their home. S.B. thought it was strange that K.B. had to go to work that day, and he suspected that she was having an affair, so he surreptitiously followed her in his car. K.B. did not go to work, but went to the home of K.F., a man whom S.B. did not know. S.B. waited in his car outside the house for a while before he went to the front door and rang the doorbell. K.F. opened the door, and S.B. said, "Is my wife here?" Tr. at 9. K.F. answered, "If your wife's name is [K.B.,] then she's here." *Id.* K.F. let S.B. into the house, and S.B. found K.B. in the kitchen. S.B. was "irate" and accused K.B. and K.F. of having an affair, which they denied. *Id.* S.B. "started getting more threatening and more intimidating," at which point K.F. "moved to the other side of [a] counter to put space in between" him and S.B. *Id.* at 9-10. K.F. then asked S.B. and K.B. to leave, and they did.

[3] In March 2017, S.B. gained access to K.B.'s cell phone and discovered emails and text messages revealing that K.B. and K.F. had had an affair that spanned years. S.B. was "angry" and decided that he "needed answers" and "wanted to look [K.F.] in the eye." *Id.* at 39-40. Accordingly, S.B. drove to K.F.'s office to confront him. When S.B. arrived, he asked a receptionist where he could find K.F., and she told him that K.F. was in a meeting. S.B. barged past the

receptionist and found K.F. in a conference room. K.F. described the ensuing confrontation as follows:

> [S.B.] came up and started pointing his finger at me, absolutely irate, body posture and look in his face. He started . . . yelling at me and said some vulgarities and indicated that he had proof that I was currently in a physical relationship with his Wife. He told me that I better stay away from her. He told me that he if gets a divorce from his wife over this, that he was coming back for me. I then instructed him in a stern manner to leave. He started to walk away, turned around, came back, didn't exit the private area initially, but indicated he was headed out the door, came back towards me pointing his finger, continued to scream at me, and I told him again he had to leave, and so then he turned around, walked out.

*Id.* at 11-12. Thereafter, K.F. "called the police and requested advice on what they thought I should do. They said that they felt that a personal protection order was appropriate[.]" *Id.* at 13.

[4] On March 23, K.F. filed a petition for an order for protection alleging that S.B. had stalked him. That same day, the trial court issued an *ex parte* order for protection enjoining S.B. from threatening to commit or committing acts of stalking against K.F. or his family members, J.S. and W.F. The order also enjoined S.B. from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with K.F. Appellant's App. Vol. II at 6. Finally, the order required that S.B. "stay away" from K.F.'s residence and place of employment. *Id.* at 7. Following an evidentiary hearing on October 5 and

November 27, the trial court ordered that the *ex parte* order for protection "shall remain in full force and effect." *Id.* at 8. This appeal ensued.

## Discussion and Decision

S.B. contends that K.F. presented insufficient evidence to support the trial court's issuance of the order for protection for S.B.'s alleged stalking. In particular, S.B. maintains that K.F. did not prove either that S.B.'s conduct constituted repeated or continuing harassment of K.F. or that K.F. felt terrorized, frightened, intimidated or threatened by S.B.'s actions. We cannot agree.

Initially, we note that K.F. has not filed an appellee's brief. As a result, we will not undertake the burden of developing arguments on his behalf and will reverse if S.B. establishes prima facie error. *WindGate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018). Prima facie, in this context, means at first sight, on first appearance, or on the face of it. *Id.* This standard, however, "does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required." *Id.*

As we have explained, orders for protection

> are similar to injunctions, and therefore in granting an order the trial court must *sua sponte* make special findings of fact and conclusions thereon. *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013) (citing, *inter alia*, Ind. Trial Rule 52(A) and Ind. Code § 34-26-5-9(a), (f)). We apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the

order. *Id.* at 149. In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 369 (Ind. Ct. App. 2013), *trans. denied* (2014). We do not reweigh evidence or reassess witness credibility, and we consider only the evidence favorable to the trial court's order. *Id.* The party appealing the order must establish that the findings are clearly erroneous. *Id.* "Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them *de novo.*" *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

*S.B. v. Seymour Cmty. Sch.*, ___ N.E.3d ___, No. 36A01-1710-PO-2252, 2018 WL 1463343, at *5 (Ind. Ct. App. Mar. 26, 2018) (quoting *Fox v. Bonam*, 45 N.E.3d 794, 798-99 (Ind. Ct. App. 2015)).

[8] As relevant here, "stalking" requires "repeated or continuing harassment" that would cause a reasonable person to feel threatened and that actually caused a person to feel threatened. I.C. § 35-45-10-1. Without question, "the term 'repeated' in Indiana's anti-stalking law means 'more than once.'" *Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied*. "Continuing" is commonly defined as "[u]ninterrupted; persisting." Black's Law Dictionary 388 (10th ed. 2014). And we have held that "continuing" requires not just current but future activity. *S.B.*, 2018 WL 1463343, at *5. Here, the evidence before the trial court sufficiently demonstrates both a current threat and a future threat. *See id.* Finally, we construe the Indiana Civil Protection Order Act to

promote the prevention of violence on which a petition is based. *See* I.C. § 34-26-5-1.

[9] The evidence most favorable to the trial court's judgment supports its finding that S.B. had committed stalking against K.F. At the evidentiary hearing, K.F. testified that on December 26, 2016, S.B. was "irate" and "started getting more threatening and more intimidating," at which point K.F. "moved to the other side of [a] counter to put space in between" him and S.B. Tr. at 9-10. K.F. also testified that when S.B. subsequently showed up at K.F.'s office, S.B. told K.F. that he had "better stay away from K.B." and that if he were to get divorced from K.B. as a result of the affair, he "was coming back" for K.F. *Id.* at 12. That evidence is sufficient to prove that S.B. was engaged in a course of conduct involving both repeated and continuing harassment.[1]

[10] Still, S.B. contends that K.F. did not present evidence that he actually felt terrorized, frightened, intimidated, or threatened as a result of the harassment. *See* I.C. § 35-45-10-1. Rather, S.B. maintains that the evidence, as well as K.F.'s argument at the evidentiary hearing, shows only that K.F. felt embarrassed by S.B.'s conduct. But, again, the evidence shows that, during the December 26, 2016, incident, K.F. described S.B.'s conduct as "threatening" and "intimidating," and he testified that that conduct caused K.F. to move away from S.B. and behind a kitchen counter. Tr. at 9. And, immediately

---

[1] S.B.'s characterization of his confrontations with K.F. as "mutual communication between two parties" is not well taken. Appellant's Br. at 10-11.

following the incident at K.F.'s office, K.F. contacted law enforcement for advice on what to do about S.B. That evidence supports a reasonable inference that K.F. felt threatened as a result of S.B.'s harassment. *See, e.g.*, *A.S. v. T.H.*, 920 N.E.2d 803, 807-08 (Ind. Ct. App. 2010) (holding evidence supported reasonable inference that victims felt terrorized by harassment).

[11] In sum, K.F. presented sufficient evidence to show that S.B. engaged in repeated and continuing harassment that would cause a reasonable person to feel threatened and that actually caused K.F. to feel threatened. S.B.'s arguments to the contrary are merely requests that we reweigh the evidence, which we cannot do. We hold that the trial court's issuance of the order for protection is not clearly erroneous.

[12] Affirmed.

Robb, J., and Altice, J., concur.