## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 21 2018, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John J. Schwarz, II
Schwarz Law Office, PC
Hudson, Indiana

ATTORNEY FOR APPELLEES
PUTNAM COUNTY
COMMISSIONERS

Trudy L. Selvia
Greencastle, Indiana

ATTORNEYS FOR APPELLEE
INTERVENOR

Hayleigh J. Neumann
Robert J. Nice
The Nice Law Firm, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William E. Morrison and
Sonya Morrison,

*Appellants-Respondents,*

v.

Putnam County Commissioners,

*Appellees-Petitioners,*

and

Donald Richards,

September 21, 2018

Court of Appeals Case No.
18A-PL-462

Appeal from the Putnam Superior
Court

The Honorable Raymond M.
Kirtley, Senior Judge

Trial Court Cause No.
67D01-1402-PL-3

*Appellee-Intervenor*

**Baker, Judge.**

[1] William and Sonya Morrison own a farm in Cloverdale that has accumulated a significant amount of junk and debris. The Putnam County Commissioners (the County) determined that the Morrisons were in violation of a zoning ordinance that prohibits agricultural property from being used as a junkyard. The trial court granted an injunction and ordered the Morrisons to dispose of the complained-of items. The Morrisons appeal, arguing that the evidence is insufficient and that the trial court made errors of law. Finding sufficient evidence and no other error, we affirm.

# Facts

The Morrisons own approximately thirty-five acres of land in Cloverdale; they have owned the land since 1983.[1] Appealed Order p. 1. Donald Richards owns a neighboring parcel of land.

On February 7, 2014, the County filed a petition for a temporary restraining order (TRO). The trial court issued the TRO on February 10, 2014. Neither the petition nor the TRO are included in the record on appeal. We infer that the petition included a demand that the Morrisons remove certain things, including, for example, semi-trailers, flat-bed trailers, and debris, from their property and that the trial court indeed made such an order. The TRO also restrained the Morrisons from moving additional trailers and debris onto the property.

On March 17, 2015, the trial court ordered the Morrisons to make substantial progress towards moving the items off their property. Apparently, little progress was made, and on September 15, 2015, the trial court held a rule to show cause hearing. In July 2016, the trial court found that the Morrisons were not in compliance with the TRO and ordered them to comply.

---

[1] There is some discrepancy in the record regarding the year in which the Morrisons purchased the property. For the purposes of this appeal, however, it is irrelevant whether the purchase took place in 1983, 1985, or 1986.

On November 21, 2016, Richards intervened in the case. Thereafter, the parties were referred to mediation, but were unable to reach a resolution. On February 9, 2017, Richards filed a motion for a preliminary and permanent injunction and the County filed a motion for a preliminary injunction. The County's motion indicated that the Morrisons' property was zoned as A1-Agriculture Protection District, that the Morrisons were using the land as a junkyard, and that the use of the land in that fashion is contrary to the land use of the A1 zone. Intervenor's App. Vol. II p. 11.

On September 12, 2017, the trial court held an evidentiary hearing. On November 30, 2017, the trial court issued an order granting the requested preliminary and permanent injunctions. In pertinent part, it found and concluded as follows:

24. The Court finds that there are items on the property not being used for agricultural purposes that are abandoned, junked, inoperable or derelict vehicles, machinery, farm machinery equipment or miscellaneous scrap or building debris. Said items fall under the definition of junkyard per the Putnam County Zoning Ordinance and [are] in violation of said Ordinance.

25. Over one hundred photos were offered and admitted into evidence. These photos, and sworn testimony accompanying them show the following:

a. Semi-trailers, including both flat bed and box trailers, have been brought upon the Farm since 2013.

b.     Additionally, significant amounts of construction debris and scrap metal have been brought on to the Farm since 2013.

c.     Additionally [sic] machinery, farm machinery, multiple motorized vehicles and equipment, including but not limited to cars, trucks, bulldozers, and a backhoe [have been] brought on to the Farm since 2013 and remain there left abandoned, junked and inoperable condition and in a state of deterioration.

26.     The Court finds that the Respondents have made use of the real property and maintained certain farm equipment and property thereon that is within the meaning of farming operation and which includes growing of field crops, raising, handling and holding Emus and producing compost for application onto the real property, which are all permitted uses per the Ordinance in regard to A1 Zoning.

***

31.     The Court recognizes this has been an ongoing dispute which has now gone on for several years.  While the Court has no direct interest in taking action simply to resolve neighborly disagreements, it does recognize the benefit of enforcing existing zoning laws so as to promote order and predictability in land usage, which may in turn yield such a benefit.

Conclusions of Law

***

3.     The [Morrisons] are operating a junkyard on their real estate . . . , in violation of the Putnam County Zoning Ordinance.

***

6.    [The Morrisons] shall remove any semi-trailers and flatbed trailers and their associated debris from the real property . . . . as previously ordered on or about February 10, 2014 . . . .  This shall be completed within 30 days of this Order.

7.    [The Morrisons] shall remove any additional tractors, trailers, motor vehicles, backhoes, bulldozers, metal scrap, and any other associated debris, brought on to the Farm since 2013 . . . .  This shall be completed within 90 days of this Order.

***

13.    The [Morrisons] are permanently enjoined from bringing any further machinery or material onto the Farm, except that which is permitted under the Ordinance.

Appealed Order p. 3-8.  The Morrisons now appeal.

## Discussion and Decision

[7] The Morrisons make multiple arguments, which we restate as follows:  (1) there is insufficient evidence supporting the trial court's judgment; and (2) the ruling is erroneous as a matter of law.

[8] When reviewing a trial court's ruling stemming from a bench trial, we will only set aside the judgment if it is clearly erroneous.  *E.g.*, *WindGate Props., LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018).  We first consider whether the evidence supports the trial court's findings of fact and then consider whether the findings support the judgment.  *Id.*  We give due regard to the trial court's

ability to assess the credibility of witnesses and defer substantially to its findings of fact. *Id.* We do not afford the same deference to the trial court's conclusions of law. *Id.*

# I. Sufficiency

The Morrisons first argue that there is insufficient evidence supporting the trial court's conclusion that they were impermissibly operating a junkyard. They also argue that the evidence supports a conclusion that their use of their property constitutes a prior nonconforming use that should be permitted.

It is undisputed that the Morrisons' land is zoned as A1-Agriculture Protection District. The A1 zone has certain permitted uses, permitted accessory uses and structures, and development standards. A "junkyard" is a non-permitted use of land zoned as A1. The relevant ordinance defines "junkyard" as follows:

> A place, usually outdoors, where waste or discarded used property other than organic matter, including, but not limited to, automobiles, farm implements and trucks, is accumulated and is or may be salvaged for reuse or resale; this shall not include any industrial scrap metal yard or normal farming activities.

Putnam County Code § 155.005, *available at* Appellants' App. Vol. II p. 45.

[11]     Richards testified at the evidentiary hearing and described, in great detail, the items covering the Morrisons' property.[2]  Among other things, the land holds:

- Many unused and inoperable semi-trailers and truck beds, some of which were off their wheels;
- Metal debris;
- Multiple inoperable vehicles without license plates;
- Many piles of metal;
- Propane tanks;
- Tires;
- Vehicle axles;
- A trailer entirely full of trash;
- Box trailers;
- A backhoe, bulldozer, and Bobcat; and
- A significant amount of debris and junk.

Tr. Vol. II p. 164-67.  The Morrisons admitted that they did not remove the semi-trailers and flatbeds that the trial court ordered to be removed in the February 2014 TRO.  *Id.* at 83-84.  They also admitted that they have since brought additional tractors and motor vehicles onto the property since February 2014.  *Id.* at 84-85.  The director of the Putnam County Director of Planning and Zoning testified that the abandoned vehicles and scrap metal on the property would meet the ordinance's definition of a junkyard.[3]  *Id.* at 51.

---

[2] To the extent that the Morrisons appear to argue that the evidence offered by Richards cannot be used to support the trial court's judgment because the County bore the burden of proving its case, we note that they apparently did not object to Richards's intervention in the case and certainly did not appeal it.  As he is now a full party to the case, his evidence may be considered alongside the County's.

[3] The Morrisons note that at another point in his testimony, the director testified that the junkyard definition would not apply because the items were not in their front yard.  This amounts to a request that we reweigh the evidence, which we may not do.  We must focus only on the evidence supporting the trial court's

[12] We find that this evidence supports the trial court's conclusion that the Morrisons were using their property as a junkyard. The evidence shows that the Morrisons' land was a place outdoors where waste or discarded used property, including automobiles, farm implements, and trucks, was being accumulated and the property could have been salvaged for reuse or resale. Furthermore, the trial court took great care in its order to distinguish between items that were part of normal farming activities, which are not affected by the judgment, and items that did not qualify as such, which must be removed. Appealed Order p. 5-7.

[13] The Morrisons insist, correctly, that there is no evidence in the record that they salvaged the junk for reuse or resale. But the definition does not require that; it merely requires that the items "*may* be salvaged for reuse or resale[.]" Putnam County Code § 155.005 (emphasis added). Whether or not they currently are or have been in the past, the many items described above could be salvaged for reuse or resale; therefore, this use of the property meets the definition of junkyard. *See* Tr. Vol. II p. 98-99 (Morrison testifying that all the items on his property could be reused because he would dispose of them properly if they became unusable).

[14] The Morrisons also note that there is undisputed evidence in the record that their property was a farm, arguing that the same plot of land could not

judgment. Moreover, we note that this witness's testimony regarding the location of items in the front yard was prevaricating and inconclusive. Tr. Vol. II p. 50-51.

simultaneously be used as a farm and a junkyard. They are correct that there is evidence in the record showing that the property is a farm, and indeed, the trial court's order explicitly acknowledged as much, carving out exceptions to its order for items on and uses of the land that were part of the farming operation. We cannot conclude, however, that the same plot of land could not be used both as a junkyard and as a farm. One plot of land may have multiple uses, especially where, as here, it covers thirty-five acres. Nothing in the ordinances or caselaw suggests that a property that is partially being used as a junkyard can *only* be designated as such. We agree with Richards that "a more accurate statement is that *by* simultaneously using his Property as both a farm *and* a junkyard, Morrison is in violation of the Ordinances." Intervenor Br. p. 12 (emphases original). Therefore, this argument is unavailing.

[15] The Morrisons also argue that the trial court should have found that their property was protected via an established prior nonconforming use. A prior nonconforming use

> is a use of property that lawfully existed prior to the enactment of a zoning ordinance that continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions. The general rule is that a nonconforming use may not be terminated by a new zoning enactment.

*Metro. Dev. Comm'n of Marion Cty. v. Pinnacle Media, LLC*, 863 N.E.2d 422, 425 (Ind. 2005).

[16]    Initially, we note that the Morrisons did not raise this argument to the trial court.  As such, they have waived it.  Waiver notwithstanding, the Morrisons did not offer evidence that the items on their property predated the relevant ordinances, which went into effect in 1992.  Moreover, they admitted that they have added items to the property since the 2014 TRO, tr. vol. II p. 84-85, and Richards testified that some of the items on the property were recent additions, while others had been there ten to fifteen years—which would date back to 2002 to 2007, long after the ordinances were enacted.  Because the Morrisons offered no evidence such as proofs of purchase, sales disclosures, or receipts to prove that any of the items on the property predated the enactment of the ordinance, this argument is unavailing.[4]

## II.  Inverse Condemnation

[17]    Next, the Morrisons argue that the trial court's order amounts to an unconstitutional taking by inverse condemnation.  Yet again, they did not make this argument to the trial court and have therefore waived it.  *See Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 73 (Ind. Ct. App. 2014) (holding that "[c]onstitutional rights are not absolute and may be waived").

---

[4] The Morrisons argue that the fact that they received no notices of violation in the 1980s, 1990s, or 2000s, establishes that their use of the property was a prior nonconforming use.  But this evidence in no way shows whether the complained-of items were actually on their property during the decades before the ordinance was enacted.

[18]    Waiver notwithstanding, it is well established that "not every restriction placed upon private property constitutes a taking, and our supreme court has drawn a distinction between 'a parcel of property [that] is not zoned for its best and most profitable use and a situation where the present zoning restriction results in a deprivation of one's property rights.'" *Galbraith v. Planning Dep't of City of Anderson*, 627 N.E.2d 850, 852-53 (Ind. Ct. App. 1994) (quoting *Young v. City of Franklin*, 494 N.E.2d 316, 317-18 (Ind. 1986)). A taking occurs when all reasonable use of the property is prevented by the land use regulation. *Id.* at 853. Therefore, a zoning regulation becomes confiscatory only when it denies the property owner all economically beneficial or productive use of the land. *Id.*

[19]    In this case, the Morrisons are not arguing that the ordinance itself, which prohibits an A1-zoned property from being used as a junkyard, is confiscatory. Nor do they claim that the ordinance denies them all economically beneficial or productive use of the land. As such, the restriction contained within the ordinance is not confiscatory, and the enforcement thereof does not amount to inverse condemnation.

[20]    What they appear to be arguing, instead, is that the trial court gave them so small a window to dispose of the property that they will have to sell the items at a financial loss. But they have had *since 2014* to dispose of much of the debris—the thirty-day window imposed by the trial court for these items is eminently reasonable given their repeated refusals to abide by the TRO. And the trial court afforded them with ninety days to dispose of the items not covered by the

TRO, which we find to be a reasonable amount of time. We do not find that the trial court's order amounts to an inverse condemnation.

## III. Right to Farm Act

[21] Finally, the Morrisons argue that they are protected by the Indiana Right to Farm Act. Ind. Code § 32-30-6-9. Yet again, they failed to make this argument to the trial court and have therefore waived it for appeal.

[22] Waiver notwithstanding, the Indiana Right to Farm Act contains restrictions on the circumstances under which agricultural operations may be subject to nuisance claims. I.C. § 32-30-6-9(d). The Morrisons argue that the County's lawsuit amounts to a nuisance claim that should be governed by this statute.

[23] Had the County chosen to do so, it could have pursued a claim under the ordinances for maintaining a common nuisance. Putnam County Code § 155.999. It elected not to approach the situation in that way, however, and we see no basis on which to conclude that this zoning violation action is a nuisance claim in disguise. Therefore, we find that the Indiana Right to Farm Act does not apply.

[24] In his brief, Richards asks that we order the Morrisons to pay attorney fees for maintaining a frivolous appeal and/or acting with bad faith. We decline to do so.

The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.