## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 16 2020, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edgar J. Cyr, <br> *Appellant-Respondent,* <br><br> v. <br><br> Jennifer N. (Cyr) Bowen, <br> *Appellee-Petitioner.* | December 16, 2020 <br><br> Court of Appeals Case No. <br> 20A-DR-1109 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable J. David Grund, Special Judge <br><br> Trial Court Cause No. <br> 34D04-0901-DR-18 |

**Pyle, Judge.**

## Statement of the Case

[1] Edgar Cyr ("Husband") appeals the trial court's order: (1) requiring Jennifer (Cyr) Bowen ("Wife") to pay him $783 for his child support overpayment; and (2) denying Husband credit for overpayment of support in all other respects.

Husband contends that the trial court abused its discretion in awarding him $783 because, according to Husband, he was entitled to $4,834. Finding no abuse of the trial court's discretion, we affirm the trial court's judgment.

[2] We affirm.

# Issue

Whether the trial court abused its discretion in calculating Husband's child support overpayment.

# Facts

[3] Wife filed a dissolution petition in January 2009. Shortly thereafter, Husband filed a motion for change of judge, and a special judge was appointed to the case at the end of January 2009. The special judge dissolved the parties' marriage in June 2010. In July 2010, an income withholding order was served on Husband's employer. In October 2010, another special judge was appointed to the case. That judge ("the trial court") has remained on the case for the past ten years.

[4] In November 2012, the trial court issued an order ("the November 2012 order"), which explained that a May 2012 order ("the May 2012 order") had directed the parties "to submit calculations of child support over-payment and proposed Orders relative thereto, based upon the Court's findings in its prior Order and [Husband's] actual payment(s)." (App. Vol. 2 at 33). The May 2012 order is not included in Husband's Appendix.

[5] The November 2012 order found that Husband "ha[d] overpaid his child support obligation in the sum of $5,006[.]" (App. Vol. 2 at 33). To address this overpayment, the trial court ordered Wife to pay Husband $1,000 by December 2012 and another $1,000 by June 2013. "In addition to the lump sum reduction[,] . . . the Court conclude[d] that a child support reduction of twenty-five dollars ($25.00) per week [was] the most appropriate manner in which to repay [Husband] the remaining additional portion of the over-paid child support ($3006.00)[.]" (App. Vol. 2 at 34). The trial court further ordered Husband to pay Wife "the sum of twenty dollars ($20.00) per week until such time as the difference between [Husband's] obligation of forty-five dollars ($45.00) per week and [Husband's] actual payment, less [Wife's] intervening actual lump sum payments, equal[ed] $5,006.00[.]" (App. Vol. 2 at 34).

[6] In June 2013, Wife filed petitions to: (1) show cause; (2) modify parenting time; and (3) modify support. Husband filed petitions to: (1) clarify a visitation order; and (2) modify support to include post-secondary educational expenses for one of the parties' children. The trial court held hearings on the parties' petitions in November 2013 and May 2014. Between the two hearings, the trial court granted Husband's counsel's motion to withdraw his appearance, and another attorney entered his appearance on Husband's behalf.

[7] In July 2014, the trial court issued an order ("the July 2014 order"), which granted Wife's petition to modify support as of the date of filing and ordered Husband to pay Wife $107 per week retroactive to June 2013. The trial court found that Husband was "in arrears in his Child Support obligation, following

the Court's retroactive modification, in the amount of $4069.00 as of July 4, 2014." (App. Vol. 2 at 37). The trial court, therefore, ordered Husband to "pay an additional $43.00 per week against the arrearage until said arrearage [was] extinguished for a total support payment of $150.00 per week[.]" (App. Vol. 2 at 37). The trial court also found that Husband owed Wife $5,210.33 for uninsured medical expenses from 2009 through 2012 as well as $398.34 for one of the parties' son's college expenses. The trial court ordered Husband to pay Wife the $5,608.67, reduced by $271.61, which Wife had apparently owed Husband pursuant to the May 2012 order. The trial court further found that Husband was "in indirect contempt of Court for failing to pay his share of uninsured medical expenses" and ordered him to pay $500 in attorney fees to Wife's attorney "to purge himself of contempt." (App. Vol. 2 at 38, 39).

[8] The July 2014 order mentioned the November 2012 order and that the trial court had "found [Husband] had overpaid support in the amount of $5,006 and reduced support to the sum of $20 per week until the overpayment was repaid [and had] ordered Wife to pay a lump sum totaling $2,000 to [Husband] and the $25 reduction in support was to repay the $3,006 balance of the overpayment." (App. Vol. 2 at 36). Apparently, Wife had paid Husband the $2,000. However, the July 2014 order did not state the status of the $3,006 that had remained. Specifically, the trial court did not calculate how much of the $3,006 that Husband had recouped since the trial court had entered the November 2012 order nor mention whether the trial court had considered any remainder when it had entered the retroactive modification.

[9]     The July 2014 order also found as follows:

> 8. That the hostility between the Parties cannot be remedied by any Order of the Court. Further, given the age of the children and the attitude of the children exhibited in this matter and prior matters, the Court cannot further the best interests of the child Cole by Judicial intervention. [Wife's] petition to modify parenting time and [Husband's] petition to clarify Visitation Order are denied.

(App. Vol. 2 at 37).

[10]    We have reviewed the procedural history of this case from August 2014 to May 2018 through entries in the trial court's Chronological Case Summary (CCS) that is included in the Husband's Appendix. Husband did not include any of the actual motions or orders in his Appendix. For example, the CCS reveals that, in August 2014, Husband filed numerous pleadings, including a motion for credit for child support payments that he had made to the trial court clerk, a motion for credit on medical payments, a motion for credit on college expenses, a motion for contempt for perjury and misleading the court, a motion to correct error, and an affidavit in support of his motion to correct error. Also, according to the CCS, in September 2014, Wife filed a motion to show cause. The CCS reveals that the trial court held a hearing on these pending motions in January 2015.

[11]    On January 13, 2015, the trial court entered an order on the pending motions. According to the CCS, the trial court found that Husband's motion to correct error had been deemed denied. The trial court further found that Husband

"was entitled to credit in regard to any support payments made via the ISETS system." (App. Vol. 2 at 15). The trial court "instruct[ed] each counsel to prepare an arrearage calculation for submission to the Court within fourteen (14) days of th[e] order." (App. Vol. 2 at 15). Husband did not appeal the denial of his motion to correct error.

[12] The CCS reveals that Husband filed a submission of calculations on January 21, 2015, and a motion asking the trial court to reconsider its January 13 order on February 6, 2015. According to the CCS, after obtaining a continuance, Wife filed a submission of calculations on February 27, 2015. The CCS reveals that the trial court set the parties' submission of calculations for a hearing on May 14, 2015. On May 13, 2015, Husband filed a corrected ISETS explanation and "requested a credit for erroneously applied support payment." (App. Vol. 2 at 16). According to the CCS, the parties appeared for the May 14 hearing, and the matter was continued at Husband's request.

[13] The next substantive CCS entry is more than three years later when, in August 2018, Husband filed a motion for college expenses and a petition to terminate support. In the petition to terminate child support, Husband affirmed that he was the father of Cole Cyr, who was born on October 8, 1999 and whose college expenses were the subject matter of the litigation. Husband alleged that: (1) child support for Cole automatically terminated on October 8, 2018, Cole's nineteenth birthday; (2) he was paying for Cole's college room and board; and (3) pursuant to Indiana law, he should not have to pay both child support to Wife and college room and board for Cole.

[14]     In June 2019, the trial court granted Husband's motion to terminate support. In November 2019, Wife filed a motion to modify post-secondary education obligation. In January 2020, Husband filed a motion for credit for overpayments on support and credit on college expenses. The motion specifically requested "[c]redit for payments made on support to the Clerk which were involuntary payments via an income withholding order [and] [c]redit for [] the college expenses for all support overpayments." (App. Vol. 2 at 46). At no time has Husband filed a petition asking Wife to show cause why she should not be held in contempt for failing to credit him for his $3,006 child support overpayment.

[15]     The trial court held a hearing on the motions in February 2020. At the hearing, the trial court asked the parties to tell it "what issues [they] all saw pending." (Tr. Vol. 2 at 4). Husband's counsel responded as follows:

> Your Honor as I see the status of the case I have brought with me today the Clerk's support records. I have done a rather complicated calculation because we never really did come up with any arrearage or any overage calculations after custody went back and forth a couple times, he had one, she had two, they kind of fell off the board so I had to go back to the last time you did do a calculation which was, there was [a] several thousand dollar overpayment that was to be taken off of his current obligations to her, then there was an Income Withholding Order. So I've got a calculation that reflects all of that and [] I brought a copy of the support records[.] I did two overpayment calculations 'cause it took quite a while to get the Income Withholding Order terminated. There's two available dates as I see it for the termination of the obligation to pay support. By statute, age nineteen, which in this case was October

of [2018][.] But also there's case law that says once a child goes to college and the parents are paying his room and board, it would be due, it would be a duplication of expenses because a component of support is also room and board which is also a component of college expenses. So I've done two calculations[.] The only real issue is what to do with his Income Withholding Order overpayments.

(Tr. Vol. 2 at 5, 7).

[16] Wife's counsel responded as follows:

Your Honor as I understand it and what I've written down is, that Cole is deemed emancipated by agreement of the parties October the 8th, 2018. Number two, that the Court wants the parties to uh put into writing a support status umm of [Husband] between July 10th, 2014, it would be to October 8th, 2018. And that would be his period of obligation for support and if he's paid beyond that, which he has, then he's going to get a credit. against something. And then three, that we're going to make a college contribution calculation and I assume that we're going to use what you ordered for Cody that twenty percent is imposed upon Cole and then that the remainder is going to be eighty percent would be paid by the parties income percentages. And from my point of view, that's where we're at.

(Tr. Vol. 2 at 16-17).

[17] No witnesses testified at the hearing. Rather, the parties agreed that they would submit their calculations to the trial court for a paper review. Husband filed his calculations and exhibits in May 2020. Husband specifically submitted: (1) the July 2014 order; (2) the Clerk's records of support payments that Husband had made from June 2013 through May 2019; and (3) his calculation of his child

support overpayment. Based on this calculation, Husband requested that the trial court credit him a $1,828 overpayment for payments made to the Clerk's office from June 2013 through October 2018 pursuant to an income withholding order. This request for $1,828 included $2,659 in "counter payments[,]" which Husband does not further explain. (App. Vol. 2 at 64). Husband also requested that the trial court credit him the $3,006 overpayment that was included in the November 2012 order. In addition, Husband submitted to the trial court proposed findings and conclusions thereon. Wife did not submit calculations or findings.

[18] In May 2020, the trial court issued an order terminating Husband's child support for the parties' son, Cole, as of October 8, 2018, the date of his emancipation. The trial court also ordered Cole to be responsible for 20% of his college expenses and for Husband to pay 68% of the remaining college expenses and Wife to pay 32% of the remaining college expenses. In addition, the trial court ordered Wife to pay Husband a child support overpayment of $783 and denied Husband's request for credit for overpayment on child support in all other respects.

[19] Husband now appeals.

# Decision

[20] At the outset, we note that Wife did not file an appellate brief in this matter. We do not develop arguments on behalf of an appellee who fails to file a brief. *WindGate Properties., LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018).

In such cases, we will reverse if the appellant establishes *prima facie* error, meaning error at first sight or error on the face of it. *Id.* However, even in light of this relaxed standard, we still have the obligation to correctly apply the law to the facts in the record to determine whether reversal is required. *Id.*

[21] Husband argues that the trial court abused its discretion in calculating the amount of child support overpayment due to him. He specifically contends that he overpaid child support in the amount of $1,828 through an income withholding order and that Wife still owes him a $3,006 credit as set forth in the November 2012 order. Therefore, according to Husband, the trial court should have awarded him a $4,834 credit on what he owes for his son's college expenses. We review decisions regarding child support for an abuse of discretion. *Mitten v. Mitten*, 44 N.E.3d 695, 699 (Ind. Ct. App. 2015). An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[22] In addition, because Husband filed the motion requesting a credit for his overpayment of child support, he has the burden of establishing the amount of child support overpayment to which he was entitled. *See Cross v. Cross*, 891 N.E.2d 635, 641 (Ind. Ct. App. 2008) (explaining that the party that requests a child support modification has the burden of establishing that she was entitled to have the child support order modified).

[23] We further note that our supreme court has expressed a "well-established preference in Indiana 'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Appellate deference to the determination of trial court judges, especially in domestic relations matters is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Because trial courts are tasked with assessing credibility and character through both factual testimony and intuitive discernment, trial judges are in a superior position to ascertain information and apply common sense. *Id.* Therefore, we neither reweigh the evidence nor reassess witness credibility, and we view the evidence most favorably to the judgment. *Id.*

[24] Lastly, we note that, although Husband complains that the trial court's order is "without explanation or findings justifying the court's calculations of support overpayments," neither Husband nor Wife requested findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. (Husband's Br. 15). In addition, the trial court did not issue findings of fact and conclusions thereon *sua sponte*. In such cases, the general judgment standard applies, and we may affirm the trial court's judgment on any theory supported by the evidence. *Hickey v. Hickey*, 111 N.E.3d 242, 245 (Ind. Ct. App. 2018).

[25] Husband first argues that the trial court abused its discretion when it "limited [his] overpayment on support to the [$783 in] [income withholding payments]

received by the Clerk after the child turned 19 on October 8, 2018." (Husband's Br. 11). We disagree.

However, in his August 2018 petition to terminate support, Husband specifically alleged that child support for Cole had automatically terminated on October 8, 2018, Cole's nineteenth birthday. In addition, at the February 2020 hearing, Husband told the trial court that "there [were] two available dates . . . for the termination of the obligation to pay support." (Tr. Vol. 2 at 5). One of the dates that Husband proposed was October 8, 2018, the date that Cole turned nineteen. Husband therefore invited the error about which he now complains.

The Indiana Supreme Court recently explained as follows:

> The invited-error doctrine is based on the doctrine of estoppel and forbids a party from taking advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct. Where a party invites the error, [he] cannot take advantage of that error. In short, invited error is not reversible error.

*Matter of J.C.*, 142 N.E.3d 427, 432 (Ind. 2020) (internal citations omitted). Here, because Husband specifically proposed the October 8, 2018 date to the trial court, Husband cannot now argue that the trial court abused its discretion in using this date.

We further note that, pursuant to INDIANA CODE § 31-16-6-6, "[t]he duty to support a child under this chapter, which does not included support for

educational needs, ceases when the child becomes nineteen (19) years of age[.]"
The trial court did not abuse its discretion when it awarded Father
overpayment on support that the Clerk received after Cole turned 19 on
October 8, 2018.

[29] Husband also argues that the trial court abused its discretion when it declined to
award him a credit for the $3,006 child support overpayment set forth in the
November 2012 order. According to Husband, "[Wife] has not made any
showing that she paid to [Husband], nor has [Wife] claimed that [Husband]
received a credit for the $3,006.00 overpayments as adjudicated in the
[November 2012 order] and [the July 2014 order][.]" (Husband's Br. 10).
However, Wife does not have the burden of proof in this case. Husband does.
*See Cross*, 891 N.E.2d at 641. In addition, at no time during the past eight years
has Husband filed a petition asking Wife to show cause why she should not be
held in contempt for failing to credit him for his $3,006 child support
overpayment.

[30] Further, our review of the orders, motions, and CCS in this case reveals that
eight years ago, the trial court found that after Wife paid Husband $2,000,
Husband had a remaining child support overpayment of $3,006. The trial court
concluded that "a child support reduction of twenty-five dollars ($25.00) per
week [was] the most appropriate manner in which to repay [Husband] the
remaining additional portion of the over-paid child support ($3006.00)[.]"
(App. Vol. 2 at 34). None of the trial court's subsequent orders specifically set
forth how much of the $3,006 overpayment Husband had recouped through his

reduced child support obligation in 2012 and the first half of 2013. The record reveals that Husband had the opportunity to advise the trial court of any remaining child support overpayment at a hearing in 2015. Father, however, requested a continuance of that hearing and did not follow up on his request until three years later.

[31] Based on the specific facts and circumstances in this case, and given the deference due to the trial court that has presided over this case for the past ten years, we cannot say that the trial court abused its discretion when it declined to award Husband a credit for the $3,006 child support overpayment set forth in the November 2012 order. The trial court did not abuse its discretion in determining Husband's child support overpayment.

[32] Affirmed.

Kirsch, J., concurs.

Tavitas, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Edgar J. Cyr,

*Appellant-Respondent,*

v.

Jennifer N. (Cyr) Bowen,

*Appellee-Petitioner.*

Court of Appeals Case No.
20A-DR-1109

**Tavitas, Judge, concurring.**

[33] I concur, but I write separately to highlight Husband's waiver of the right to challenge the trial court's order of July 10, 2014, regarding Husband's child support arrearage determination.

[34] The trial court determined in its November 9, 2012 order, that Husband had overpaid his child support obligation in the amount of $5,006.00. The trial court ordered Wife to pay two lump sum payments of $1,000.00 each at specific times and the remainder of the overpayments were to be reimbursed by way of reduction of Husband's weekly child support payments – the remainder of $3,006.00.

[35]     In the July 2014 order, the trial court considered Wife's two payments of $1,000.00 to Husband for the arrearage she owed. The trial court's order was comprehensive and detailed. The trial court found Husband's arrearages were as follows in 2014:

|   |   |   |
|---|---|---|
| a. Support | | $4069.00 |
| b. Casey College | | $398.34 |
| c. Medical Expenses | | $5210.33 |
| | TOTAL | $9677.67 |

Appellant's App. Vol. II p. 39.

[36]     Father could have and did not appeal the Order of July 10, 2014. If the trial court erred in its child support arrearage determination in 2014, the remedy was an appeal at that time. *See, e.g., Holman v. Holman*, 472 N.E.2d 1279, 1287 n.9 (Ind. Ct. App. 1985) (holding that the husband waived any error related to the cost of his child's parochial school education by failing to appeal from the original decree). I find Husband waived his right to appeal the 2014 determination of the child support arrearage and the subsequent determination of child support arrearage/overpayments based on the trial court's order of May 19, 2020, which is the subject of this appeal. Accordingly, I concur.